MOUNT LEONARD MILLING COMPANY, Plaintiff in Error,
v. THE LIVERPOOL AND LONDON AND GLOBE
INSURANCE COMPANY, Defendant
in Error.

### Kansas City Court of Appeals, March 28, 1887.

1. INSURANCE—CONDITIONS OF POLICY—QUALITY OF TITLE—CASE AD-
JUDGED.—Where the evidence shows that, under the application
for, and the provisions of, a policy of insurance, the statement made
by the applicant respecting the *quality of his title*, was made ex-
press warranty, and the fact appears that his interest in the prop-
erty was any other " than the entire, unconditional and sole
ownership," his cause must fail. *Held*, that in this case the plain-
tiff was not the entire, unconditional and sole owner of the prop-
erty, as he claimed to be in his application.

2. CONTRACT OF SALE OF PERSONAL PROPERTY, WHAT CONSTITUTES—
CHARACTER OF TRANSFER.—A sale of personal property *is a transfer*
of the *absolute* or *general* property in a thing for a price in money ;
a transfer of the *special property in a thing* is not a *sale of the
thing*.

ERROR to the Saline Circuit Court, HON. JOHN P.
STROTHER, Judge.

*Affirmed.*

Statement of case by the court.

This is an action to recover for loss sustained, alleged

to be covered by the provisions of a policy of insurance. The policy is dated June 2, 1884. By its terms, it covered plaintiff's mill stock, consisting of sacks, grain, flour and feed stuff, contained in plaintiff's mill building. The fire occurred during the life of the policy, by which the property insured was destroyed. The cause was submitted to the court, sitting as a jury, upon the following agreed statement of facts :

"For the purpose of a trial of the above case, at the present term of said court, the following statement is agreed upon as covering the facts in the case :

"The defendant executed and delivered to the plaintiff the policy of insurance, the premium for which was paid by plaintiff, and which is in words and figures as follows :

"Before the execution of said policy, and to procure the same from defendant, the plaintiff made and delivered to the defendant the written and printed application referred to in the policy, which application is in words and figures as follows :

"That, on the nineteenth day of June, 1884, the property alleged in the petition to have been destroyed by fire was so destroyed.

"That, on the seventh day of July, 1884, the plaintiff made and delivered to defendant formal proof of loss, as required by the terms of the policy.

"The defendant admits its liability to pay for all the property so destroyed, and mentioned in the petition, excepting the five thousand six hundred and seventy grain sacks branded 'Cole Bros. Com. Co.' That the value of the property so destroyed, excepting the five thousand six hundred and seventy sacks, was $724.30, and that on the ——— day of ———, 1884, defendant deposited with the clerk of this court, for use of plaintiff, said amount, with interest and costs accrued to that date.

"The five thousand six hundred and seventy sacks were in the possession of the plaintiff, and in plaintiff's

mill, at the time said policy was issued, and at the time of the fire, and were destroyed by the fire.

"That said sacks were in possession of the plaintiff, who had received them, in the year 1883, from the Cole Bros. Commission Company, of St. Louis, who were then the owners of them, and who leased them to the plaintiff under an agreement by which plaintiff was to pay said Cole Bros. Commission Company two cents per month rent for each of said sacks, for such time as plaintiff should keep them, which agreement further provided that plaintiff should pay the Cole Bros. Commission Company for all sacks which should not be returned to it by plaintiff, at their market value.

"Under the contract, plaintiff paid the rent on the sacks to Cole Bros., up to the time of the fire, but said sacks were never returned; since said sacks were so destroyed, the plaintiffs have settled with Cole Bros. Commission Company, and paid them for said sacks at eighteen cents each, which was their market value."

Written in the body of the policy was the following:

"Application and survey number five hundred and eight, now on file in the company's office, referred to, which is hereby made a part of this contract and warranty on the part of the assured."

The conditions of the policy were as follows:

"Terms and conditions upon which this policy is issued."

Condition No. 1 provided as follows:

"If an application, survey, plan or description of the property herein insured, is referred to in this policy, such application, survey, plan or description shall be considered a part of this contract and warranty, by the assured;      *      *      *      or if the interest of the assured in the property, whether as owner, trustee, consignee, factor, agent, mortgagee, lessee, or otherwise, be not truly stated in the policy,      *      *      *      then, and in every such case, this policy shall be void."

"If the interest of the assured in the property be any other than the entire, unconditional and sole ownership of the property for the use and benefit of the assured, * * * it must be so represented to the company and so expressed in the written part of this policy ; otherwise the policy shall be void."

In the application was the following question and answer: "Is the ground, mill, machinery and stock in the mill, all owned exclusively by the applicant for this insurance ? " Answer: "Yes."

The whole controversy in this case is as to the liability of the defendant for the sacks contained in the mill and destroyed by the fire. On this issue the court declared the law as follows :

"The court declares that, upon the pleadings and evidence in this case, there can be no recovery on account of the destruction of the five thousand six hundred and seventy sacks branded 'Cole Bros. Com. Co.,' mentioned in the petition."

The plaintiff has brought the case here by appeal.

BOYD & SEBREE, for the plaintiff in error.

I.   The representation of plaintiff in applying for the policy, to the effect that the sacks in question were the property of the plaintiff, is of no importance, unless it affected the risk, and such statement did not affect the risk in this case. *Shultz v. Merchants Ins. Co.*, 57 Mo. 337.

II.   The *interest* of the assured is measured by the extent of his loss, in case of loss, and if, when the property is destroyed, he is the exclusive loser to the full extent of the value of the goods, then he is the *exclusive owner*, so far as the insurance contract is concerned.

III.   Under the contract with Cole Bros., plaintiff was the only one who could lose, by destruction of the goods, and was with reference to any loss the exclusive owner. *Shaw v. Ætna Ins. Co.*, 49 Mo. 580 ; *Gaylord v. Lamar*. 40 Mo. 14.

Gage, Ladd & Small, for the defendant in error.

I. The plaintiff having made an application, which was referred to in the policy, the same by the terms of the policy became a part thereof and a warranty by the assured. The answer to the question in the application, "Is the *ground*, *mill*, *machinery* and *stock* in the mill all owned *exclusively* by the applicant for this insurance?" being, at the time, untrue, in point of fact, as to the 5,670 sacks, the warranty was broken, and as to those sacks the policy had no effect. *Loehner v. Home Mutual Ins. Co.*, 17 Mo. 248; *Mers v. Franklin Ins. Co.*, 68 Mo. 127; *American Ins. Co. v. Barnett*, 73 Mo. 364; Wood on Insurance [1 Ed.] sect. 137.

II. The contract having provided that, "if the interest of the assured in the property be any other than the entire, unconditional and sole ownership of the property for the use and benefit of the assured, * * * it must be so represented to the company, and so expressed in the written part of the policy, otherwise the policy shall be void;" and also having provided that, "if the interest of the assured in the property, whether as owner, trustee, consignee, factor, agent, mortgagee, lessee, or otherwise, be not truly stated in this policy," then and in that case the policy should be void; and the plaintiff not having been the entire, unconditional, and sole owner of the 5,670 sacks, but having been in fact the lessee thereof, and the same not having been truly stated in the policy and expressed in the written part thereof, as to these sacks the policy was null and void. *Mers v. Franklin Ins. Co.*, 68 Mo. 127; *American Ins. Co. v. Barnett*, 73 Mo. 364; *Reithmueller v. Ins. Co.*, 20 Mo. App. 246; *Adema v. Lafayette Ins. Co.*, 36 La. Ann. 660; *Farmers & Drovers Ins. Co. v. Curry*, 13 Bush, 312; *Kibbe v. Hamilton Ins. Co.*, 11 Gray, 163; *Southwich v. Atlantic Ins. Co.*, 133 Mass. 457; *Rohrback v. Germania Ins. Co.*, 62 N. Y. 47; *Lasher v. St. Joseph Ins. Co.*, 86 N. Y. 423; *Agricultural Ins. Co. v. Mon-*

*tague*, 38 Mich. 548; *Miller v. Amazon Ins. Co.*, 45 Mich. 463; *Waller v. Northern Assurance Co.*, 64 Iowa, 101; *McCormick v. Ins. Co.*, 66 Cal. 361.

Philips, P. J.—There is no ground for controversy but that, under the application for, and the provisions of, the policy of insurance, the statement by plaintiff respecting the quality of his title to the sacks was made express warranty. *Loehner et al. v. Home Mutual Ins. Co.*, 17 Mo. 247; *American Ins. Co. v. Barnett*, 73 Mo. 364; Wood on Insurance, sect. 137.

It is equally undeniable that if the interest of the assured in the sacks was any other "than the entire, unconditional and sole ownership," his cause must fail. Authorities, *supra; Mers v. Franklin Ins. Co.*, 68 Mo. 131; *Reithmueller v. Insurance Co.*, 20 Mo. App. 250; *Ins. Co. v. Montague*, 38 Mich. 548; *Southwick v. Atlantic Ins. Co.*, 133 Mass. 457; *McCormick v. Mutual Ins. Co.*, 66 Cal. 361.

This is to be distinguished from that class of cases where the question is, had the plaintiff an insurable interest in the property?

There is no doubt in my mind but that, by the terms of the contract under which the plaintiff held the sacks, he had an insurable interest in them; and that the measure of his recovery would have been the market value of the property at the time of the loss; for that was the measure of his liability over to the Cole Bros. *Shaw v. Ætna Ins. Co.*, 49 Mo. 578.

But the question here is one of contract—an express warranty—that the interest of the assured in the property was the absolute ownership, with the stipulation that if his interest was otherwise the policy was not binding. The single question, therefore, is, was the plaintiff the entire, unconditional, and sole owner of the sacks?

It must be admitted that his relation to the sacks was somewhat peculiar. There was no limitation placed

by the contract between him and Cole Bros. as to the time when the letting should cease. The plaintiff was to pay a sum certain as rental during the time he kept them. From which it would seem that the lease or bailment would continue at the pleasure of the plaintiff, so long as he chose to pay the rental. It was, however, still a lease, for the agreed statement of the facts is, the Cole Bros. "leased them to plaintiff."

This, without more, would defeat the plaintiff's claim, that he was the absolute owner. The interest and estate of a lessee is less than the absolute, unqualified ownership. But plaintiff contends that this admitted quality of his estate is enlarged into an absolute one by the subsequent provision of the contract, "that plaintiff should pay Cole Brothers Commission Company for all such sacks which should not be returned to it, by plaintiff, at the market value." Did this amount to a sale of the sacks, or even a contract of sale? A sale of personal property is a transfer of the absolute, or general, property in a thing for a price in money. There must be a transfer of the absolute or general property in the thing sold; "for, in law, a thing may, in some cases, be said to have, in a certain sense, two owners, one of whom has the general, and the other a special, property in it; and a transfer of the special property is not a sale of the thing." Benj. on Sales, sect. 1. There was certainly no intent on the part of the parties to the contract, to pass a present title, absolute, in the sacks from Cole Brothers to plaintiff. As lessee, the plaintiff was only a special owner. The general ownership remained in the lessor, for the plaintiff was to pay the company for the use of the property, and did so pay for the same up to the very instant of the fire. It certainly is incompatible with the idea of general, absolute ownership in the thing, that plaintiff should pay, under contract, for the use of what he himself owned absolutely.

It occurs to me that the facts of this case bring it

within that line of cases which regard the contract a bailment, as distinguished from a sale. Where one receives goods upon a contract to keep them a certain period, and, if he pays for them in that time, to become the owner, but, otherwise, is to pay for the use of them, it is a bailment, and the property in the goods is not changed until paid for. *Rose v. Story*, 1 Barr. 195 ; *Sargent v. Giles*, 8 N. H. 325.

In *Enlow v. Klein* (79 Pa. St. 488), Enlow furnished Klein's vendor with a team of horses and wagon to use in peddling. He was to pay Enlow at the rate of five dollars per week until the sum reached two hundred dollars, the value of the property, when he was to become the owner. The court say, that the intent of this contract was for the owner to place the property in the possession of another, for the use of which he was to be paid, in the aggregate, two hundred dollars, and the ownership was to vest in that other party only on payment of that sum ; that, until that was done, it was a mere bailment—the ownership of the property remaining in Enlow. "No present interest was created in the bailee by this agreement, so as to make the property subject, in his hands, to the claims of execution creditors."

So, in *Crist v. Kleber*, a piano was rented for a rent payable quarterly, the rent to determine at the election of the lessor, if the rent were not paid; with privilege to the lessee to buy, and, if purchased, all sums paid as rent to be deducted from the purchase price. The court held it to be a continuing lease, determinable at the option of the plaintiff, if the rent was not paid. "The property remained in bailment, and, consequently, was not liable to a sale for payment of his (the lessee's) debts, or for taxes." Had the plaintiff, in this case, become insolvent, without having paid to Cole Brothers the market value of the sacks, they could not, according to the authorities *supra*, have been taken in execution for plaintiff's debts. The underlying difficulty in

the plaintiff's way is the fact that there was no bargain and sale. The plaintiff took as lessee, or bailee, to pay a stipulated sum per month for the use of the sacks. He was to so pay as long as he kept them. He had the option, it may be conceded, to end, at any time, the relation of bailor and bailee, by paying to the bailor the market value of the sacks, and thereby relieve himself of the obligation to pay the rental, and become the absolute owner. But, until he made the election, by making, or tendering, payment of the value, the relation of bailor and bailee continued. If it can be regarded as an election at all, the plaintiff did not make it until after the destruction of the property by fire. The doctrine of title by operation of the fiction of relation, as applied in the case of *Gaylor v. Lamar Insurance Company* (40 Mo. 18), has no application to the facts of this case. Had the plaintiff made his election by paying for the sacks prior to the loss by fire, there might be some color for the application of that doctrine. But when the contract of insurance was consummated, and when the loss occurred, the plaintiff was paying Cole Brothers for the use of their property. He was then a lessee, or bailee.

The stipulation to pay for all such sacks as should not be returned was little more than what the law would have implied in the absence of such express agreement. Regarding it, however, as an option accorded to plaintiff to pay the value of the sacks, he could only become the owner by exercising that election. This election he could not defer until after the loss by fire. The legal status of the title must be determined, at the latest admissible time, by the facts as they existed when the fire occurred. No subsequent act of the plaintiff, by paying his bailor for property which he had not returned, could affect the special contract of insurance.

It must follow that the judgment of the circuit court should be affirmed. The other judges concurring, it is accordingly so ordered.