L. L. GRIGSBY, Appellant, v. GERMAN INSURANCE COMPANY, Respondent.

### Kansas City Court of Appeals, March 31, 1890.

1. **Insurance**: LIMITATION ON PROOF OF LOSS AND COMMENCEMENT OF SUIT. A provision of an insurance policy, requiring suit to be brought within six months next after the loss or damage shall occur, means six months from the date of the loss, and not from the ascertainment of the amount thereof ; and this, too, notwithstanding said policy contained a provision that proof of loss should be made in sixty days after the loss.

2. ———: FAILURE TO DISCLOSE TITLE. Where the policy of insurance requires a disclosure of the title to the property insured, if the assured does not disclose his title or discloses a false one, he cannot maintain an action on the policy.

3. ———: EXAMINATION UNDER OATH AND SUBSCRIPTION THERETO. Where the assured submits to an examination under oath as required by the terms of the policy, he has a reasonable time in which to consult with his attorney before signing the same, but this will not avail plaintiff as an excuse for failing to make proof of loss within the specified time, where, as in this case, half of the time limited remained and the assured did not consult his attorney during the currency of such time.

4. ———: WAIVER : ESTOPPEL. There should be something in the conduct of the insurer in the nature of an estoppel in order to constitute a waiver of a condition in an insurance policy.

*Appeal from the Caldwell Circuit Court.*—HON. J. M. DAVIS, Judge.

AFFIRMED.

Statement by the court.

The following is an agreement introduced in evidence, which relates to the property insured :

"This agreement by and between W. H. H. Frye and L. L. Grigsby witnesseth : That the copartnership heretofore existing between said parties under the style

of 'Frye & Grigsby' is dissolved. Grigsby is to take all the assets of the said firm, including all goods, wares and merchandise, notes, accounts and trade fixtures; said assets being shown by invoice made on the tenth day of July, 1883; and he is to pay all debts and liabilities of the firm, outstanding and unpaid; and to protect Frye from loss on said account. Grigsby, for the use of Frye's share of the capital stock, which is forty-six hundred and ninety-six and seventy-hundredths dollars, as shown by said invoice, and which is to be left in Grigsby's control, is to pay Frye ten dollars per week, payable on Saturday, November 17, 1883, and every Saturday thereafter until November 10, 1884. At the end of one year Grigsby shall have the option of taking the said stock at $4,696.70, provided the same has not been in the meantime sold, as hereinafter provided. On payment of said sum to Frye a perfect title to all said assets shall vest in Grigsby; and Frye shall execute all instruments necessary to perfect his title.

"Each party reserves the right to sell, assign and transfer all his share in said stock and assets, provided the consent of the other is first obtained; and no transfer is to be made without the consent of the other. If Frye shall sell his interest the obligation of said Grigsby to pay to the said Frye weekly installments shall cease. Grigsby is not to suffer the stock to decrease below $4,696.70 at a fair invoice price during the year. If he shall do so said sum of $4,696.70 shall become immediately due Frye and thereafter said sum shall bear interest at ten per cent. Grigsby is not hereafter to use the firm name in purchasing goods, etc., but all purchases shall be made on his individual credit and account. He shall have no right to attach the firm name to any commercial paper, or to use it in any way except in settling outstanding notes and accounts due the firm. If Grigsby does not choose to take the

stock at the end of the year at $4,696.70, then the partnership shall be resumed on the conditions heretofore existing ; or the stock shall be disposed of in such manner as they shall agree on ; Frye being entitled to $4,696.70 out of the proceeds or in the capital of the new firm. Executed in duplicate this tenth day of November, 1883. W. H. H. FRYE,

"L. L. GRIGSBY."

The following further agreement was likewise introduced:

"This agreement between W. H. H. Frye and L. L. Grigsby witnesseth : That the interest of the said Frye in the stock of goods, wares and merchandise, now under the control of said Grigsby, at Hamilton, Missouri, is reduced to the sum of three thousand dollars ; and his interest in the store building to seven hundred and fifty dollars. Now it is agreed that Frye will leave said interest in said stock in the hands of the said Grigsby for another year from November 10, 1885, upon the following agreements and conditions : Said Grigsby is to have the privilege of discharging the interest of said Frye in the said stock of goods at any time within the year by paying said Frye said sum of three thousand dollars and interest from November 10, 1885, at six per cent. per annum ; interest payable semi-annually. Grigsby to have the privilege of paying in such installments as may suit him, but such installments shall not be less than one hundred dollars. He is also to have the privilege of paying in cash or good solvent notes, bankable, such as may be approved by Houston, Spratt & Menifee ; but Grigsby is not to be held as indorser on any such notes as may be received or accepted by said Frye. On payment as aforesaid in money or notes, the interest of said Frye in the said stock of goods shall be reduced by the amount of such payment. Grigsby is to have the stock insured in the sum of three thousand dollars, loss payable to Frye as his interest may appear

at the time of loss, in case of loss by fire.   Such poli-
cies to be taken out on or before January 1, 1886, for
one year.

· "Grigsby is to have the privilege of buying the
interest of Frye in the store building, now occupied by
said Grigsby, by paying said Frye therefor the sum of
seven hundred and fifty dollars, with interest thereon at
eight per cent. from November 10, 1885; payable semi-
annually.   In case he shall not purchase the building
on or before the year 1885 from November 10, he shall
pay rent for its use, sixty dollars a year, payable semi-
annually.   The rent begins November 10, 1885.   In case
of purchase and payment of purchase price in full, Frye
shall convey, by warranty deed, a one-half interest in
the half lot on which the building stands; also one-half
interest in the front building, forty feet; and the whole
of the rear building.   Frye shall have a lien on the
goods in the store, or which hereafter may be placed in
the store, as security of the payment of his interest in
the sum of three thousand dollars; but such lien shall
not interfere with the right of Grigsby to sell and
dispose of the same at such price and upon such condi-
tions as he may see fit.   Grigsby covenants that he will
from time to time replenish such stock of goods, so that
the fair market value thereof will be equal to the
interest of Frye in the same, including interest and
rents.   In the witness whereof the parties have signed
duplicate copies hereof this November 25, 1885.   '

"W. H. H. FRYE,
"L. L. GRIGSBY."

*Johnson & Wait* and *W. A. Wood*, for the appellant.

(1)   By entering on an examination of the value of
the goods and circumstances attending the loss, and
calling in the aid of the plaintiff and his agents, the
defendant waived preliminary proofs of loss.   *Badger
v. Ins. Co.*, 49 Wis. 396; *Okey v. Ins. Co.*, 29 Mo. App.

105; *Ins. Co. v. Davis*, 98 Pa. St. 280; *Thierolf v. Ins. Co.*, 110 Pa. St. 37. (2) Grigsby's refusal to sign the written examination until he could consult his attorney was a good ground for declining to sign at that time. *Phillips v. Ins. Co.*, 14 Mo. 220. (3) By refusing to return the examination of Grigsby for amendment, the company waived all objections to failure to sign. *Findeisen v. Ins. Co.*, 57 Vt. 520. (4) By placing their refusal to proceed with the adjustment, and pay his claim, on the ground of the refusal of Grigsby to sign his examination, the defendant waived all other objection to the proofs. *Daul v. Ins. Co.*, 35 La. Ann. 38. The proofs furnished were reasonably certain, and were sufficient. *Erwin v. Ins. Co.*, 24 Mo. App. 145. (6) To constitute an "absolute interest" in the goods, it was not essential that his title should be the entire and exclusive title to the same. May on Ins., sec. 288; *Lebanon v. Erb*, 112 Pa. St. 149. (7) As the policy is ambiguous, that interpretation should be put on it which is most favorable to Grigsby. *Brown v. Ass'n Co.*, 45 Mo. 221.

*G. W. Barnett*, for the respondent.

(1) The court did right in sustaining the demurrer to the evidence. The alleged loss occurred September 30, 1886, and suit was brought April 28, 1887, more than six months after the loss. *Bradley v. Ins. Co.*, 28 Mo. App. 7; *Glass v. Walker*, 66 Mo. 32; *Fullam v. Ins. Co.*, 7 Gray, 61; *Johnson v. Ins. Co.*, 91 Ill. 92; *Keirn v. Ins. Co.*, 42 Mo. 38; *Ins. Co. v. Weiss Bros.*, 106 Pa. St. 20; *Reddlebergher v. Ins. Co.*, 7 Wall. 386. (2) Under the contracts read in evidence by the plaintiff, he was not the sole, absolute and unconditional owner of the property insured, and, as he insured as such, he cannot recover. *Milling Co. v. Ins. Co.*, 25 Mo. App. 259; *Barnard v. Ins. Co.*, 27 Mo. App. 26;

*Ins. Co. v. Barnett,* 73 Mo. 364; *Reithmuller v. Ins. Ass'n,* 20 Mo. App. 264. (3) Plaintiff could not recover because the policy provides that "the assured shall, if required, submit to an examination on oath by the company's adjusting agent, and subscribe to such examination when reduced to writing, and until such examination is permitted the loss shall not be payable." Although plaintiff submitted to an examination, he refused to sign the same, and, having refused to comply with this condition of the policy, cannot recover. *Phillips v. Ins. Co.,* 14 Mo. 220 ; 2 Wood on Fire Ins., sec. 449, p. 989, and cases cited; *Titus v. Ins. Co.,* 9 Ins. Law. Jour. (N. Y.) p. 664. (4) The plaintiff did not furnish proofs of loss within sixty days, required by the policy, and, hence, cannot recover unless there was a waiver. Plaintiff was not misled by anything the adjuster did or said, because he dealt at arm's length with him. He said he did not rely on what the adjuster said, but put the matter in the hands of a lawyer. Before there can be a waiver of proofs of loss, there must be something said or done by the company's agent, while there is yet time to make the proofs, which has thrown plaintiff off his guard and led him to believe that proofs would not be required. *Underwood v. Ins. Co.,* 57 N. Y. 500; *Blossom v. Ins. Co.,* 64 N. Y. 162; *Ins. Co. v. Weiss Bros.,* 106 Pa. St. 20; 2 Wood on Fire Ins. [2 Ed.] pp. 943, 944, 945, 946 and 980 and notes; *Ins. Co. v. Sennett,* 41 Penn. 161; *Briggs v. Ins. Co.,* 8 W. Rep. (Mich.) 124; 2 Wood on Fire Ins. [2 Ed.] p. 946; *Blossom v. Ins. Co.,* 64 N. Y. 162.

ELLISON, J.—This action is on a policy of insurance containing a provision that a proof of loss should be made in sixty days and that "no suit or action of any kind against this company for the recovery of any claim under or by virtue of this policy shall be sustainable in any court of law or chancery, unless such suit

or action shall be commenced within the term of six months next after the loss or damage shall occur; and, in case any suit or action shall be commenced against this company after the term of six months after the loss or damage shall have occurred, the lapse of time shall be taken and deemed as conclusive against the validity of such claim thereby attempted to be enforced, any statute of limitation, the contrary notwithstanding.'' The loss occurred September 30, 1886, and this suit was commenced April 26, 1887, being more than six months.

At the conclusion of plaintiff's case the trial court gave an instruction in the nature of a demurrer to the testimony and plaintiff has appealed. The suit having been instituted more than six months after the loss occurred, we must hold, under former rulings of this court and the supreme court, that it cannot be maintained. *Glass v. Walker*, 66 Mo. 32; *Bradley v. Ins. Co.*, 28 Mo. App. 7; *Thompson v. Railroad*, 22 Mo. App. 321. Notwithstanding there were sixty days after loss in which proof of loss should be made and that the amount of the loss was not payable till sixty days after the loss should be ascertained in accordance with the terms and conditions of the policy, yet the provisions above quoted, requiring suit to be instituted within six months, means six months from the date of the loss and not from an ascertainment of the amount thereof.

II. By reference to the two agreements between plaintiff and W. H. H. Frye concerning the stock of goods insured, it will appear quite conclusively that plaintiff's interest or title was not absolute. That Frye had an interest which should have been disclosed. This, of itself, was sufficient to justify the demurrer to the testimony under the following provision of the policy: ''2. If the interest in the property be a leasehold, rental, mortgagee's or other undivided partnership interest, or a building standing on leased ground, or

other interests not absolute, it must be so represented to this company, and expressed in this policy in writing ; otherwise this insurance shall be void." Such provisions in an insurance policy are reasonable and are enforced by the courts and if the assured will not disclose his true title or discloses a false one, he has but himself to blame for his loss. *Milling Co. v. Ins. Co.*, 25 Mo. App. 259 ; *Barnard v. Ins. Co.*, 27 Mo. App. 26.

III.　The policy contained the following provision : " The assured shall, if required, submit to an examination on oath by the company's adjusting agent and subscribe to such examination when reduced to writing, and until such examination is permitted the loss shall not be payable." Plaintiff submitted to an examination under oath but refused to subscribe his name. He should have done so unless there was some good reason to the contrary. *Phillips v. Ins. Co.*, 14 Mo. 220 ; 2 Wood Fire Ins., sec. 449, and note thereto. His excuse for not signing was that he wanted to consult his attorney as to whether it would be proper for him to sign. We are of the opinion that plaintiff had the right to reasonable time in which to consult his attorney before signing the examination. In his situation it was but natural that he should exercise caution and that he should want to learn what legal bearing the examination would have. But this will not avail plaintiff, under the circumstances that have been developed by the testimony, as an excuse for failing to make proof of loss within the time specified. At the time the refusal occurred there was yet left more than half of the time limited, within which he could have consulted his attorney, signed his examination and made up his proof. But he never consulted his attorney during the currency of the time he should have made his proof, for on December 27, nearly ninety days after the fire, his attorney wrote that he would have plaintiff sign the statement unless it contained some "flagrant mistake"

and that he "*was not aware before of his, plaintiff's, refusing to sign.*"

Plaintiff testified that defendant's agent was not pleased with his refusal to sign the examination and that he "told me (him) to take the policy and abide by it." He further stated that he anticipated trouble with the company. That he hired a lawyer and did not rely upon the agent. There should be something in the conduct of the insurer in the nature of an estoppel in order to constitute a waiver of such conditions in the policy. *Gale v. Ins. Co.*, 33 Mo. App. 664. It is apparent that plaintiff was not being deceived or misled by the conduct of the defendant's agent. He was not lulled into a false security and thereby prevented from doing that which, but for the conduct of the agent, he would have done. He testified, in effect, that he relied upon himself and his attorney, and that he was told that he must abide by the terms of his policy.

He does state that he was not told at that time that he must furnish his proof, but he was told to comply with the policy which required the proof. The judgment is affirmed. All concur.