EMILY A. SIMMONS, Respondent, v. MODERN
WOODMEN OF AMERICA, Appellant.

Kansas City Court of Appeals, November 23, 1914.

1. FRATERNAL BENEFICIARY ASSOCIATONS: Benefit Cer-
tificate: Limitation of Right to Sue: Two Constructions. In
policies of insurance which contain a provision limiting the
time for bringing the action to a certain period of six months,
or twelve months or any other definite time from the date of
the loss or the fire, or the death; and also contain a further
provision that the loss is not payable until a certain number
of days after the amount of it is ascertained; it is *held*, by
many authorities that the time limited for the action begins to
run from the time of the loss or the death. But in an equal
number it is *held*, that the other provision qualified the limita-
tion and that it does not begin to run until the time in which
the company may withhold payment has passed. Authorities
discussed.

2. ————: Lex Loci Contractus. The law of the place where a
contract is made and is to be performed governs the construc-
tion of the terms of an isurance policy.

3. ————: Limitations: Law of Place of Contract. A contract
of life insurance made in Iowa provided that any action thereon
should be brought within eighteen months from the death;
but also provided that the money was not payable until after
the company's board of directors passed on the claim. It was
*held* that as the law of Iowa was that the limitation did not
begin to run until the board had passed on the claim, it would
be so decided in Missouri, though the law might be different in
that State.

4. ————: Rejecting Claim: Notice: Limitation. When a con-
tract of life insurance provides for eighteen months limitation
of right to bring an action thereon and provides further that
the insurance is not payable until after the claim is on by the
company's board of directors; it was *held* to be the duty of that

board to notify the assured that they had rejected the claim, and until such notice the limitation for beginning the action did not begin to run.

5. ————: **Hazardous Employment: Waiver.** The by-laws of a fraternal benefit association provided that if a member who had a certificate of life insurance became engaged in the hazardous labor of brakeman on a railroad train, he should notify the association and have his certificate extended so as to cover such occupation; it was *held* that if the member notified the "Camp Clerk" who stated that he would see to it, and did not, but continued to collect premiums for two years until the member died, that the company waived the necessity of an extended certificate and was liable for the insurance.

6. ————: **Clerk of the Camp: Agent: Waiver.** A "Clerk of the Camp" of a fraternal benefit association who collects dues and to whom applications for extended certificates should be made is the agent of the association whose acts may constitute a waiver of taking out the extended certificate.

Appeal from Adair Circuit Court.—*Hon. C. D. Stewart,* Judge.

REVERSED AND REMANDED.

*Truman Plantz* and *Bailey & Hart* for appellant.

(1) The contract here sued on having been made and entered into in the State of Iowa and performed in said State its validity must be determined by the law of that State. Summers v. Aid Assn., 84 Mo. App. 605; Roach v. St. Louis Type Foundry, 21 Mo. App. 118; Cravens v. New York Life Ins. Co., 148 Mo. 583; Dolan v. Royal Neighbors, 123 Mo. App. 147; Roberts v. M. W. of A., 133 Mo. App. 207; Horton v. Ins. Co., 151 Mo. 616; Kavanaugh v. Royal League, 158 Mo. App. 234; Hauck Clothing Co. v. Sharp, 83 Mo. App. 385; Ruhe v. Buck, 124 Mo. 178; Lange v. N. Y. Life Ins. Co., 162 S. W. 589; Thompson v. Traders Ins. Co., 169 U. S. 12. (2) This part of the contract is an essential part thereof, a condition precedent to liability and does not relate to the remedy. The right is extinguished by failure to bring suit within the stipulated time.

Berkley v. Tootle, 163 Mo. 595; Riddlesbarger v. Hartford Ins. Co., 7 Wall. 386. (3) Where the contract, under its terms, is not forfeited by the member engaging in a hazardous occupation there can be no waiver of forfeiture by the acceptance of assessments, nor can the insurer be estopped from claiming its exemption from liability in accordance with the express terms of the contract. Abel v. Modern Woodmen of America, (Minn.) 105 N. W. 65; Modern Woodmen of America v. Talbot, (Neb.) 107 N. W. 790; Crites v. Modern Woodmen of America, (Neb.), 117 N. W. 776; Showalter v. Modern Woodmen of America, (Mich.), 120 N. W. 994; Queatham v. Modern Woodmen of America, (Mo. App.) 127 S. W. 651; Modern Woodmen of America v. Weekley, (Okla.), 139 Pac. 1,138.

*Campbell & Ellison* and *Weatherby & Frank* for respondent.

(1) This suit was brought within the time limited by the policy. 13 Am. & Eng. Ency. Law, 390; Pioneer Reserve Association v. Jones, 111 Ill. App. 156, 25 Cyc. 910. (2) The local clerk was the agent of defendant notwithstanding the provisions in the by-laws to the contrary. Boward v. Bankers, 94 Mo. App. 442; Andre v. Modern Woodmen, 102 Mo. App. 377; Keys v. Knights, 174 Mo. App. 671. (3) The acts of defendant's agent in receiving the premiums and the act of defendant in retaining them is a waiver of any right to claim a forfeiture, even if the right had existed. Keys v. Knights, 174 Mo. App. 671.

ELLISON, P. J.,—In February of the year 1904, James Simmons became a member of the defendant association at the town of Mystic in the State of Iowa by joining a local lodge at that place. There was issued to him at that place a benefit certificate of life

insurance for two thousand dollars, payable to plaintiff who was his wife. His membership was afterwards transferred to "Appanoose Camp in Centerville, Iowa." In September, 1911, he died in good standing, leaving plaintiff his widow and beneficiary in such certificate. Defendant refused payment and plaintiff began this action for the sum named and recovered judgment in the circuit court.

There are two defenses made. One that the action is barred by a provision in the certificate limiting the time in which an action may be brought; and the other that deceased violated the terms of the contract by adopting the labor of a brakeman on a railroad which is denominated as hazardous employment, requiring special action on the part of deceased and defendant in order to make the certificate applicable thereto. The provision limiting the time for bringing the action is as follows: "No action can or shall be maintained on this certificate until after the proofs of death and claimant's right to benefits as provided for in the by-laws of this Society have been filed with the head clerk, and passed upon by the board of directors, nor unless brought within eighteen months from the date of the death of the member."

This action was brought the 29th of August, 1913, which, without noting the extra three days, as five months more than the limited period of eighteen months after deceased's death. But plaintiff claims the limitation period did not begin to run until after the proofs of death were passed on by the board of directors as is contemplated by the provision just set out. On the other hand defendant insists, that the period began to run, as it reads, "from the date of the death of the member."

There is thus presented a question about which the authorities are almost evenly divided, whether considered in reference to their number, or the stand-

ing of the courts rang\*d upon either side of the con-
troversy. The question arises in claims under fire in-
surance as well as life. The provisions limiting the
time for suit in these two classes read practically alike.
In fire insurance the limit reads from the time "of the
fire," or, "the time of the loss," or, "when the loss
shall occur." In life insurance, they read substantially
as in this case.

In a note to Sample v. Insurance Co., 46 South
Car. 491, published in 47 L. R. A. 696, is found a val-
uable discussion of the question and to the great num-
ber of cases cited in the State report, others have been
added. The following are cases holding to the literal
construction that when the policy requires the action
to be brought within a stated time after the death, loss
or fire, such time begins to elapse at that day, precisely
as it reads, notwithstanding other provisions which
withhold liability until after proofs of loss, or death.
[Johnson v. Ins. Co., 91 Ill. 92; Chambers v. Ins. Co.,
51 Conn. 17; Va. F. & M. Ins. Co. v. Wells, 83 Va. 736,
740; Steel v. Ins. Co., 93 Mich. 81; Peck v. Ins. Co.,
102 Mich. 52; Hart v. Ins. Co., 86 Wisc. 77; Eagan v.
Ins. Co., 29 Oregon 403; Melson v. Ins. Co., 97 Ga.
722; Carraway v. Ins. Co., 26 La. Ann. 298; Travelers
Ins. Co. v. Ins. Co., 1 N. D. 151; Glass v. Walker, 66
Mo. 32, followed in Bradley v. Ins. Co., 28 Mo. App.
7 and Grigsby v. Ins. Co., 40 Mo. App. 276.]

Some of these distinguish between the effect of
the words of limitation, "after the fire" and "after the
loss." Others repudiate such distinction. The follow-
ing taken from decisions under policies containing
either mode of expression, shows the line of thought
of the courts holding to the literal construction of the
contract: In Hart v. Ins. Co., supra, the Supreme
Court of Wisconsin in deciding that the words "after
the fire" started the running of the time at the date
of the fire, said it could not "assent to the line of rea-

soning" which adopted some other time; and that,
"It does violence to plain words. It smacks too strongly
of making a contract which the parties did not make.
It construes where there is no room for construction.
Plain, unambiguous words which can have but one
meaning are not subject to construction. 'Twelve
months next after the fire' has one certain meaning
and but one. It can have no other." Much the same
spirited declination to follow any other than a literal
construction is found in Johnson v. Ins. Co., 91 Ill.
92, where the words used in the policy were "after
the loss." The court asked and answered these ques-
tions: "When did the loss occur? Manifestly at the
time the fire destroyed the property. In what consisted
the loss? Obviously in the destruction of the building
by fire. We are wholly unable to conceive that lan-
guage could have been used that could have ren-
dered the meaning plainer. Other words might have
been employed to express the same meaning, but to
our minds they could not have been clearer or freer
from doubt. This seems to us to be one of those prop-
ositions which are so plain that reasoning cannot add
anything to their perspicuity." And in Travelers Ins.
Co. v. Cal. Ins. Co., 1 N. D., the court asked: What
right has any tribunal to find hidden somewhere in the
contract a privilege to have the full time to sue after
the cause of action has accrued, when the policy gives
it only from the time the loss occurs? There are two
distinct provisions, one that the insured shall not sue
before a certain time, and another that he shall not
sue after a certain time. These do not clash. They
merely necessitate the construction that the intention
was to give the insured such period in which to main-
tain his action after he could sue as would be left after
deducting from the time limited the time which must
elapse before the right to sue could accrue." Further
on (p. 157) the court said that such provision is "re-

garded, not as giving the insured a specific time during *all* of which he might sue, but simply as fixing a period *beyond* which he could not·sue.'' (Italics ours.)

It is conceded in all this class of cases where the matter is referred to at all, that if other provisions of the contract leave an unreasonably short part of the time limited, the limitation clause will be void; or, if conduct of the insurance company prevents an action being brought sooner than an unreasonably short time before the limit expires, it will be estopped.

The following are cases which have adopted what is termed a relative construction. That is, they take the view that these affirmative and specific words of limitation are necessarily modified in the degree that they may relate to other words connected therewith in other provisions of the policy which prevent a right to sue from accruing against the company until a certain period after notice, or proofs of loss, or a determination of the amount due, has been had. [Steen v. Ins. Co., 89 N. Y. 315; Chandler v. Ins. Co., 21 Minn. 85; Sun Ins. Co. v. Jones, 54 Ark. 376; Murdock v. Ins. Co., 33 W. Va. 407; Ins. Co.. v. Scales, 101 Tenn. 627, 640; Case v. Ins. Co., 83 Cal. 473; Sling v. Ins. Co., 8 Utah 135; German Ins. Co. v. Davis, 40 Neb. 700.] The effect of what is said in these cases is, that the parties could not reasonably have intended to give a certain time for beginning the action and then cut off a part of that time in other provisions. But, in our judgment, the most formidable argument in favor of the proposition that the time in which the contract forbids the bringing of an action ought not to be counted as a part of the final limitation, is found in that well-recognized rule that the words and phraseology of a contract should be construed most strongly against the party who wrote them. Where an insurance contract is so drawn as that reasonable and intelligent men would differ as to its meaning, ''the doubt should

be resolved against the company, because it prepared and executed the agreement, and is responsible for the language used and the uncertainty thereby created." [Kratzenstine v. Assurance Co., 116 N. Y. 54; Moular v. Ins. Co., 111 U. S. 335.] The language of Lord St. Leanord's in Anderson v. Fitzgerald's, 4 H. of L. Cases, 484, 510, is so apropos in this connection that we quote, "A policy ought to be so framed, that he who runs can read. It ought to be framed with such deliberate care, that no form of expression by which, on the one hand, the party assured can be caught, or by which, on the other, the Company can be cheated, shall be found upon the face of it, nothing ought to be wanting- in it, the absence of which would lead to such results."

It will be noticed that we have cited our Supreme Court (Glass v. Walker, supra) and this court (Bradley v. Ins. Co., supra, and Grigsby v. Ins. Co., supra) with those courts announcing the literal construction of such policies. The report of Glass v. Walker does not affirmatively disclose that the policy contained a provision to the effect that nothing was due or payable in case of loss until a certain period should elapse, though it does show it by necessary inference, and it was assumed by us, in the cases following it, that it did contain qualifying provisions; and so the case has been classed by the courts of other States. So that were we now compelled to choose from these conflicting authorities we would be bound to follow the ruling of our Supreme Court and hold the action to be barred.

But the following consideration relieves us from the necessity of deciding the question. Deceased was a resident of the State of Iowa and was a member of an Iowa lodge. The certificate was issued to him by reason of that membership and is an Iowa contract and must be judged by the laws of that State. [Trower

Bros. v. Hamilton, 179 Mo. 206, 225; Bank v. Cooper, 85 Mo. App. 383; Dolan v. Royal Neighbors, 123 Mo. App. 147; Kavanaugh v. Royal League, 158 Mo. App. 234; Story, Conflict of Laws, secs. 331, 332; Davis v. Tandy, 107 Mo. App. 437; Machine Co. v. Tomlin, 174 Mo. App. 512, 520.]

In Iowa the construction of such insurance is that while a period different from the statutory limitations to actions generally may be agreed upon, yet, under the relative construction adopted in that State, such period does not begin to run until after a cause of action accrues, that is, until after a right to sue exists under other provisions of the policy. [Kiisel v. Ins. Co., 131 Iowa, 54; Read v. Ins. Co., 103 Iowa, 307; McConnell v. Ins. Co., 79 Iowa, 757.]

We must therefore hold that the eighteen months' period of limitation did not begin to run against plaintiff until she became aware that her claim had been rejected by the board of directors, as is contemplated by the contract.

The record shows that deceased died the 24th of September, 1911, that proof of death was made the 25th of October, 1911, and the claim rejected the 16th of September, 1911; yet this suit was not brought until the 29th of August, 1913, which was several months more than the eighteen months of limitation agreed upon.

But in avoidance of this apparent bar plaintiff introduced evidence tending to show that no notice was given to her of this adverse action by the board until the "early part of the year 1912" and she testified she did not receive notice of it until the 2nd of April, 1912. As she brought this action the 29th of August, 1913, it would be necessary to show that she was notified as early as the last of February, 1912, in order to cover the limit of eighteen months. We think the evidence sufficient to support the court's finding, that she

brought the action within eighteen months after she was notified of the board's action in rejecting her claim.

We have no doubt that it was defendant's duty to notify plaintiff that her claim had been rejected by the board of directors. It was something that no one could know but defendant until it made the communication. Her presentation of the claim called for action and decision on its part and an announcement of that decision to the claimant.

The second branch of defendant's defense is that deceased violated the terms of the contract in that, for several years before his death he was engaged in the hazardous employment of brakeman on a railway train and that his death resulted from such employment. At the time defendant issued deceased's certificate to him such hazardous employment was forbidden, but afterwards defendant altered its by-laws so as to permit members to obtain hazardous occupation certificates by applying to the camp clerk and paying an increased rate. It is clear that defendant did not prohibit taking a railroad brakeman as a risk, but merely required that if one of its members desired to enter into such employment and to continue his relations with the association, he should apply to the "camp clerk" for a certificate. This plaintiff, as deceased's wife, transacted the business connected with the insurance and reported to him. She testified that she informed the camp clerk two years before her husband's death that her husband was engaged as a brakeman on a railroad and that she had heard the policy might not be good for certain kinds of work. That the clerk informed her "everything was all right and he would find out if there was anything I should do with the policy, and if there was he would let me know." That if anything happened to her husband in the meantime the policy would be all right. She told him if it was

"no good for a railroad brakeman we wanted to drop it," and that she relied upon these assurances and continued to make the payments due, until her husband's death.

Now while it is true defendant had a right to provide that if any of its members holding certificates of insurance should engage in the occupation of brakeman on a railroad train it should forfeit the certificate. Yet, in the circumstances here shown, there was a failure to exercise such right—a waiver by affirmatively assuring the member that the occupation would not be allowed to affect his certificate and continuing for two years to accept his dues. An insurance company should not be allowed to accept premiums with knowledge of cause of forfeiture, and then deny that they bought insurance. "Waiver by the acceptance of a premium is not based upon contract, but upon estoppel of the company to insist on conditions of the policy inconsistent with the acceptance or retention of the premium." [Keys v. Knights and Ladies, 174 Mo. App. 671, 679; Jackson v. American Yeoman, 167 Mo. App. 19.]

We have no doubt that the "clerk of the camp" to whom plaintiff conveyed the information of deceased's employment, and from whom she received the assurances that everything would be right; and who regularly received the premiums or dues conceded to have been regularly paid, was the agent of defendant and that his knowledge and acts were those of the company itself. [Jackson v. American Yeoman, supra, 25; Andre v. Modern Woodmen, 102 Mo. App. 377; Boward v. Bankers Union, 94 Mo. App. 442.]

The result of the foregoing considerations is to affirm the judgment. All concur.

## ON MOTION FOR REHEARING.

PER CURIAM.—In a motion for rehearing defendant calls attention to the fact that the law of Iowa referred to in the opinion was not proven by plaintiff and therefore the case must be decided under the law as it is declared in this State. Plaintiff, in response, admits this, but contends that the law in this State should be declared to be in favor of the relative construction favored by the array of authority cited in the foregoing opinion. But the difficulty with plaintiff's situation is, that the law in Missouri has been declared by the Supreme Court in Glass v. Walker, 66 Mo. 32, adversely to her case and the only refuge she has is the law of Iowa, not proven. The case of Glass v. Walker shows that the suit was begun only twenty-two days after the limitation period expired, and the opinion shows (bottom p. 33) that proofs of loss must be made and the law is that the insurer must have reasonable period to examine these. Then it appears (p. 35) that the insurer demanded copies of the inventories of the goods and they were then furnished. Until the conditions of the policy were complied with by the plaintiff he could not bring his action. A compliance with such provisions probably took more than the time plaintiff was too late with his suit and yet the Supreme Court took no note of the fact that the accruing of the cause of action was delayed by the provisions requiring the assured to do those things. The two cases we cited from this court are likewise against plaintiff's case as made at the trial.

But we think the case should not be reversed outright and we therefore reverse the judgment and remand the cause.