GRAND LODGE COLORED KNIGHTS OF PYTHIAS v. MRS. E. E. JONES.

[56 South. 458.]

1. INSURANCE. *Mutual benefit society. Reinstatement of members. Knowledge. Constitution. Construction. Suspension of members.*

Where a member of a mutual benefit society being in arrears for dues, but entitled to reinstatement, paid an insufficient amount to the collector of the society for that purpose both the collector and the member thinking she was paying the proper amount in order to pay all arrears due, and the amount so paid was paid and received in that belief, the mistake is the mistake of the collector, and if either must suffer, it must be the insurance order and not the insured.

2. CONSTITUTION. *By-Laws. Mutual benefit society. Construction.*

When the constitution and by-laws of an insurance order are being construed in a controversy growing out of an insurance policy, they are to be construed most strictly as against the insurer and in favor of the insured.

3. CONSTITUTION. *Suspension of members. By-Laws.*

Where the constitution of a mutual benefit society provides that "a member who is in arrears to his local lodge to the amount of three dollars, dues and fines, and has been notified to pay the same at a stated time, shall be suspended from his lodge by the chancellor commander in open session and a record of such suspension shall be entered on the minutes of the lodge, provided, however, that no lodge can suspend a member for non-payment of his local lodge dues or endowment, without first having notified him, with the seal of the lodge attached." A member cannot be suspended for any dues of any kind without these requirements of the constitution being observed.

4. SAME.

Any law of the order which conflicts with the constitution is a nullity, whether it be a by-law of the grand lodge or a subordinate lodge.

5. Same.

The constitution of a subordinate lodge providing that, "A member while receiving weekly benefits from his lodge cannot become in arrears so as to debar him therefrom, the relief committee being authorized to pay the master of finance from the amount drawn for his weekly benefits a sum sufficient to prevent his becoming in arrears to the lodge the amount of three months dues. If a knight shall become in arrears for one dollar and fifty cents in fines, dues and assessments and pay the same while he is sick or disabled his good standing shall date from his recovery." *Held*, that this section has nothing to do with the endowment rank and does not conflict with the constitution of the general order, because it does not attempt to suspend a member, the local lodge having the power to regulate when and how it will distribute its benefits.

6. Insurance. *Suspension. Reinstatement. Endowment laws.*

Where the endowment laws of a mutual benefit society required payment of a specified assessment, and declared that any lodge or member failing to forward its report and taxes on or before the tenth day after the same shall have become due forfeits his rights to benefits, but further providing that the member so suspended might reinstate by paying a given sum provided he had not been out of the order for six months, and if he had been out for three months he should furnish a certificate of good health; *Held*, that, if this section means that a lodge or member is *ipso facto* suspended on failing to forward "its report and taxes on or before the tenth day after same shall have become due" or without notice and suspension as is required by the constitution of the entire order, then it is to that extent at least a nullity.

7. Same.

Where a member had never been legally suspended he was entitled to reinstatement at any time, whether he was in good or bad health on paying the amount required.

Appeal from the circuit court of Covington county.

Hon. W. H. Hughes, Judge.

Suit by Mrs. E. E. Jones against the Grand Lodge Colored Knights of Pythias of Mississippi. From a judgment for plaintiff, the defendant appeals.

The facts are fully stated in the opinion of the court.

*W. J. Latham,* for appellant.

The supreme court of Mississippi has laid down a rule that members of fraternal insurance societies must pay their dues as required by the by-laws or forfeit their policies. *Moncrief* v. *Independent Order of Jacobs,* 50 So. Rep. 558. The by-laws of the appellant fixes the duties upon its members and by section 3, page 37, it is provided that if a member fails to pay the endowment within ten days after it becomes due (April 10) because of such failure, he *ipso facto* forfeits his rights to the endowment or insurance. So that according to the law on the 10th day of April, 1910, when E. E. Jones had failed and refused to pay the dollar and seventy-five cents required of him, he, by that failure, forfeited all rights to an endowment under his policy. Jones had no excusable reason allowed by the laws of the society for his failure to pay the endowment which was required of him on or before the 10th day of April, 1910, and as he failed to so pay, he forfeited his policy. The section of the by-laws of the society which declares such forfeitures is made a part of the record.

Re-instatement must be according to law. Even though Jones forfeited his rights under the policy, and, therewith, the rights of the plaintiff to the insurance, he had some rights thereunder remaining to him according to the laws of the society, found in the same section (section 3, page 37), that is, right to reinstate his policy within six months after the 10th day of April on certain conditions which he well understood and with which he was thoroughly conversant. Having forfeited, he had only this right to reinstate. The record shows that he failed to exercise this right to reinstate while in good health and upon the payment of two dollars and twenty-five cents. There was nothing shown by the record to prevent his paying the two dollars and twenty-five cents at any time within the six months while he was in good health. He neither paid the sum of two dollars and

twenty-five cents nor was he in good health on the 20th day of May when his wife, the plaintiff paid one dollar and seventy-five cents. It was only after the plaintiff realized the critical condition of Jones, knowing that he could not reinstate himself because he was in bad health and could not make the necessary application, attempted to get the advantage by paying the premiums to the ignorant agent, get the money into his hands and get his receipt and thereby bind the defendant; but she failed in the effect of her attempt. To reinstate under the laws of the order required two things: The payment of two dollars and twenty-five cents, and being in good health. Neither of these conditions existed between the 20th and 23rd of May, 1910. He was not in good health and he did not pay the necessary two dollars and twenty-five cents. Even should the court hold that the payment of one dollar and seventy-five cents was sufficient, that amount having been accepted by Bowens, Jones could not be a financial member under the laws of the society as shown by section 2, page 29, of the by-laws, which reads as follows:

"If a knight shall become in arrears for one dollar and fifty cents in his fines, dues and assessments and pays the same while sick or disabled, his good standing shall date from his recovery." So that, unless Jones had recovered from his illness of May 20th before he died, he could not, under the laws of the society, have been in good standing. The only right which he had to reinstate existed under the contract, and if he sought to exercise that right, he must have exercised it in accordance with the terms thereof. It is said in 3 Cooley's Briefs on Insurance, page 2395, that "Since the right to reinstate is not absolute but depends upon the provisions of the contract, the insurer may impose such conditions as it sees fit, not contrary to public policy, on which reinstatement may be had," citing *Saerwin* v. *Jarmour*, 65 N. Y. Supp. 501. Again the same author on page 2399, says:

"The reinstatement of the insured who has defaulted in his payments can be based only on the substantial compliance with the stipulations of the contract or by-laws. If there is a failure on the part of the insured to fulfill the requirements, there is no reinstatement." "The payment of all arrears is of course an essential part of the requirements, and it is therefore elementary that such payment must be made as a condition precedent to reinstatement."

On page 2400 of the same work, the author holds, "That it is usually provided that the insured, who has defaulted in his payments, can be reinstated on payment of arrears if he is in good health. Where such is the provision of the contract or by-laws, the good health of the insured is a prerequisite to reinstatement, and a payment of arrears, when not in good health, will be ineffective."

On page 2405 it is held, "There can, of course, be no waiver where the superior body refused to receive the past due assessments, though they were accepted by the subordinate lodge (citing *Marshall* v. *Grand Lodge A. O. U. W.,* 133 Cal. 688). It is indeed generally held that a subordinate lodge or an officer thereof cannot waive conditions imposed as a prerequisite to reinstatement."

*Watkins & Watkins,* for appellee.

1st. The courts do not favor forfeitures.

This court decided in the case of *Murphy* v. *Independent Order,* 77 Miss. 831, and *Morgan* v. *Independent Order,* 90 Miss. 865, that forfeitures are not favored and that the rules and by-laws of fraternal orders should be strictly construed in order to prevent this result. The language of the opinion in these two cases and the authorities therein referred to contain all that we need in this connection.

2nd. As a basis for the observation which we shall present in this brief, we wish to state that the local offi-

cers of the lodge in question were the agents of the supreme chapter and notice to them was notice to the supreme chapter. This proposition is so well established in law as to need no further discussion.

In the case of *Murphy* v. *Independent Order, supra,* this court so held, and said that any effort on the part of the order to change this relation by contract was unreasonable and void.

Again, in the case of *Sovereign Camp of Woodmen* v. *Dismukes,* 38 South, 351, the same doctrine was announced.

In the case of *Bell* v. *Knights of Honor,* 80 N. Y. Supp. 751, it was held as follows:

"The subordinate lodge was in a sense the agent of the supreme lodge. Its knowledge was the knowledge of the defendant, and there is an abundance of evidence to sustain the finding of the jury that it waived the right to insist upon the forfeiture because Bell did not pay the February assessment until five days after it became due. The subordinate lodge treated him as a member in good standing when it accepted the February and March assessment, and when it forwarded the proofs of death."

The same is held in the cases of *Forester* v. *Schweitzer,* 171 Ill. 325; *Coverdale* v. *Royal Ancanum,* 193 Ill. 91; and in the case of *Alexander* v. *The Grand Lodge,* 119 Iowa, 522, the rule is announced and many cases cited.

3rd. Having agreed now that forfeitures are not favored, and that the rules of the order will be strictly construed in order to prevent this result, and that the members of the local lodge are the agents of the supreme chapter, having authority to waive forfeitures and that notice to the officers of the local lodge is notice to the supreme chapter, let us examine the record in this case and ascertain what was the relation of E. E. Jones to the order on May 20, 1910, when his wife paid to the local collector, Bowen, who accepted it and receipted for the

endowment which should have been paid April 1st or 10th, 1910. We say in this connection, first that he had not been suspended, and he had a right, there being no law to the contrary, to pay up his arrearages, and was entitled to all the benefits of membership. It is contended by counsel for the appellant that Jones was *ipso facto* suspended because he did not pay his endowment by the 10th of April, 1910, and that being in bad health he could not be reinstated. We shall expose the fallacy of these two positions upon which rest the entire case of appellant. In the first place, the failure of Jones to pay his endowment, by April 10, 1910, did not *ipso facto* suspend him. In other words, there was no by-law or provision in the constitution providing that a member should be *ipso facto* suspended upon a failure to pay his endowment. First let us examine the authorities upon that point:

In the case of *Murphy* v. *Independent Order*, 77 Miss. 831, the court held that even if there was a default by Sophia Murphy, that she was not so suspended because something had to be done by the local chapter before she could be suspended. She had to be declared "nonfinancial," and that had not been done.

In the case of *Medical & Surgical Society* v. *Weathersby*, 72 Ala. 248, "that it is settled in the case of mutual insurance companies where, with few exceptions, the failure of the assured to make punctual payments of any premium due upon a policy held by him may by contract be made to operate *ipso facto* as a forfeiture of his entire interest and membership. It is an important qualification, however, that no court will ordinarily adopt such a construction unless the intention to waive notice may be inferred from uniform custom in the particular basis or is clearly expressed by the most unambiguous and explicit language. The question resolves itself at least into one or more constructions. We have examined the constitution of the society with great care

that we might construe its various provisions in the light of these principles which most obviously govern us in arriving at a just and proper conclusion. Our opinion is that it was never intended by the framers of this instrument that a failure of a member to pay his annual dues should *ipso facto* operate as a forfeiture to his membership, but as a ground of forfeiture in the nature of a judgment *nisi* to be made final by a vote of the society. It is very true that the several articles of the constitution above set forth, exclusive of article 59, might well be construed to have this operation if they stood alone without more. They seem to declare very plainly that such defaulter shall forfeit his membership upon proper report being made by the treasurer at a designated time when his name shall be stricken by the secretary from the roll of membership and he shall be duly notified of this fact by the secretary.'' The court held in that case that some affirmative action was necessary on the part of the estate.

Again, in the case of *McDonald* v. *Chosen Friends*, 78 Cal. 49, on page 57, the court uses the following language:

"We do not find it necessary to express an opinion as to the relative merits of these somewhat nicely balanced arguments. The most favorable view for the appellant is the latter; and for the purposes of this opinion we shall assume that such is the proper construction of the provision. But in this view it is clear that the conditions of reinstatement prescribed by the provision, to-wit, a new medical certificate and a re-election by a four-fifths vote, apply only to a suspension by the council from all the privileges of membership and not to a suspension from the beneficial membership arising from delinquency and a report by the secretary. Said conditions are placed after the clause as to a suspension by the council, and it is only when the member is so suspended that they apply. Leaving out these conditions, the only difficulty

in the way of plaintiff's recovery was the forfeiture for non-payment. This, we have seen, was waived by the acceptance of the sums due.''

It is held in the case of *Backdolhn* v. *Grand Lodge,* 48 N. W. 799, that where the by-laws of the order required some affirmative action to be taken, or some notice to be taken before the suspension of a member, that he could not be suspended without such notice or affirmative action.

The same is held in 29 Cyc., page 182, par. b; and, in the case of *Dial* v. *Life Association,* 29 S. C. 560, it is held that where the by-laws of a mutual society require written notice of forfeiture of a policy, the kind of notice must be given, any other being insufficient.

It is also held in the case of *Harris* v. *Wilson,* 86 Mo. App. 407, that a member of a mutual benefit order who has been delinquent does not lose his rights and benefits on account of delinquency unless the by-laws of the order provide in express and unambiguous terms that upon his delinquency he shall *ipso facto* stand suspended.

*W. U. Corley,* for appellee.

Courts do not favor forfeitures, and where different constructions appear, the one most favorable to the assured will be adopted. This court said in *Morgan* v. *Independent Order of Sons and Daughters of Jacob,* 90 Miss. 864, 44 So. 791: ''Forfeitures are hateful to the court. The court will never avoid any insurance policy, acted upon in good faith by the insured, where the dues have all been paid and the company is in no way prejudiced by any act of the insured, unless it be in the clearest case of a violation of good faith with the insurance company.'' With this idea in view, we will present this case, and as against the first assignment of error, cite *Morgan* v. *Jacobs,* 90 Miss. 864; *Murphy* v. *Jacobs, etc.,* 77 Miss. 830; *Gunther et al.* v. *New Orleans Cotton Exch., etc.,* 5 So. 65; *Howell* v. *Knickerbocker Life*

*Insurance Co.,* 44 N. Y. 276, 4 Am. Rep. 675; *Mutual Benefit Life Insurance Co.* v. *Robertson,* 59 Ill. 123, 14 Am. Rep. 5; *Cottton States Life Insurance Co.* v. *Lester,* 35 Am. Rep. 122, 62 Ga. 247; *Hodsdon* v. *Guardian Life Ins. Co.,* 97 Mass. 144; *Phoenix Ins. Co.* v. *Radden,* 120 U. S. 183; *Shea* v. *Mass. Benefit Assn.,* 160 Mass. 289, 39 Am. St. Rep. 475; *Stylow* v. *Wis. Odd Fellows,* 2 A. S. R. 738; *Annie Knoebel* v. *N. A. Acct. Ins. Co.,* 135 Wis. 424, 115 N. W. 1094, 20 L. R. A. (New Series) 1037; *New York Life Ins. Co.* v. *Eggleston,* 96 U. S. 572; *Mayer* v. *Mut. Life Ins. Co.,* 8 Am. Rep. 34; see, also, authorities cited under 20 L. R. A. (N. S.) 1037.

Forfeiture may be waived there is no doubt. 3 Ency. of Law (2d Ed.), 1089; 11 Ency. of Law (1st Ed.), 309.

It is clearly shown that the first assignment must fall by all authorities cited. Let us see the by-laws of appellant for a moment. They claim under section 3 of article 11 of the Endowment Laws, page 37, by-laws of 1908, that we have forfeited our rights. The evidence shows that we complied with this section in every respect, even on the two theories they travel on. The required one dollar and seventy-five cents was paid, with the additional ten cents as required, and it was accepted by the one duly authorized to accept it. He in turn forwarded it to the main office and there it was accepted, but fifty cents more was wanted for reinstatement. This was also paid, and this with all amounts kept until they found Jones had died, then they many days afterwards returned the money, but not until they found Jones was dead. It was claimed that under section 2 of article 10, that under the theory of his reinstating himself, he forfeited his contract by reason of the fact, that his reinstatement must take place from his recovery. What has sections 1 and 2 of this article got to do with this case? It is with reference to benefits. What kind of benefits? Sick benefits and burial expenses is what is here provided for. Then no notice was given, and therefore

he was not at death in arrears, and this appellee is en-
titled to the face value of the policy sued on. Notice
is very material, and the very essence of their defense,
for a forfeiture is not allowed by the courts, when avoid-
able. See *Hampton* v. *Hartford Fire Ins. Co.*, 52 L. R. A.
344; *Gunther* v. *N. O. Cotton Exch.*, 5 So. 65; *Morgan* v.
*Jacobs*, 44 S. 791; *Maynard* v. *Locomotive Engineers
Ins.*, 67 A. S. R. 602. In the case of *Knoebel* v. *North
Am. Acc. Ins. Co.*, where the policy itself provided that
payments must be made by the first of the month, yet
the company had established a custom of giving notice
as set out therein, and the courts hold even in this in-
stance, the policy must be paid. In *Kavanaugh* v. *Secur-
ity Trust & Life Ins. Co.*, it was held, that where a letter
miscarried, carrying the notice required, that a subse-
quent payment would not allow a forfeiture. It cannot
be successfully contended here, that notice was not neces-
sary to a forfeiture in the case at bar.

This court in the case of *Murphy* v. *Independent Or-
der, etc.*, 77 Miss. 834, said that Delia was not non-finan-
cial for the reason that she was not "three months in
arrears" and had not been declared non-financial. This
rule prevails in this case, admitting their contention of
custom and usage. Article 11, section 3, provides that
any member may reinstate himself, within three months,
without examination and by paying two dollars and
twenty-five cents. This was done, and Jones died rein-
stated under their theory of the case, and his widow is
now entitled to recover. He was not declared to be non-
financial, and this was absolutely essential. See section
1, under Arrears, page 15, by-laws 1908. No notice was
given.

We desire to call special attention to section 5 of ar-
ticle 16, page 30, by-laws of 1908, under head of "Form
of Trial and Causes for Suspension." In this section it
is definitely and specifically set out that in the trial, if
he is being tried for failure to pay, not fines and dues,

but dues, fines and assessments and endowments, in the sum of three dollars, etc., wherein it can be done, provided, he has been notified to pay the same. Then in closing of this section, it makes it mandatory, on failure to pay after having been notified, he shall be suspended. In every instance notice is essential. The case of *Stylow* v. *Wis. Odd Fellows,* 2 A. S. R. 738, is in line with this case.

If Jones had died without his wife or himself paying the premium, the courts could perhaps hold that she was entitled to recover if she paid it within the three months. *Wright* v. *Knights of Golden Rule,* 14 L. R. A. 283.

While on this subject we desire to call attention to *Cotton States Life Ins. Co.* v. *Lester,* 62 Ga. 247, 35 Am. Rep. 122. The court went so far as to hold in that case, that if the company had refused the payment, even on a date so far subsequent, as it was in that case, that she could still recover. This case held that it made no difference, either as to her condition, whether she was sick or well, and that even on a subsequent date of payment, "saying death and bad health which caused death, are the very things against which the company insures, and it would not do to allow them to refuse payment of the premium, or to predicate a defense on change of health." Again they said, The nonexaction of punctual payment of these premiums had become the habit of the company, so far as this woman was concerned." This woman had gone for four years, and had never paid a premium on the date fixed.

E. E. Jones, deceased, like Morgan in the case of *Morgan* v. *Jacobs, etc.,* 44 So. 991, had been a member, paying his dues, assessments and endowments for many years; had the misfortune to lose his home by fire, and according to the testimony of Henry Bowen, another joint defendant with appellant, had it understood with Bowen, the party authorized to make these collections,

to let the matter go on until some future time and pay the extra fifty cents and have himself reinstated. To this Bowen agreed, but before leaving for Jackson to be operated on, Jones sent the money for this purpose, which was accepted, receipted for and mailed in to the home office, where it stayed until the 7th of June, when it was returned, having found out Jones was dead. It is very evident, if Jones had lived, the Knights of Pythias would still be controlling Jones' money He had a right to reinstate, even on their theory, and would have been, had he not died. Now this policy was issued for the very thing for which Jones was paying on it—protection; that he is dead, is no defense here. All endowments were paid, when death came and. within the time prescribed by the by-laws.

MAYES, C. J., delivered the opinion of the court.

In May, 1903, Eugene E. Jones became a member of the endowment rank of the grand lodge of the Colored Knights of Pythias, procuring a life insurance policy therein for the sum of six hundred dollars, payable at death. It is conceded that the insured continued a member in good standing up to April 10, 1910, at which time it is claimed that he defaulted in the payment of his endowment dues, and forfeited thereby the benefit sought to be secured by the policy. Eugene E. Jones died on the 23d day of May, 1910. This suit is brought by the wife to recover the amount of the insurance. The premium to be paid in order to keep up the insurance under the policy was seven dollars per year, payable quarterly in payments of one dollar and seventy-five cents, payments falling due on the 1st day of January, April, July, and October of each year. Jones made all payments up to April 1, 1910. When this last payment became due the collector for the lodge states that Jones informed him that it would be inconvenient for him to pay the dues for the quarter commencing with April, and that he in-

tended to let this payment lapse, and reinstate himself
at the next premium date, which was on the 1st of July
following. On the 20th day of May, 1910, Jones was tak-
en ill with appendicitis, and left Collins, the place where
he was living, for the purpose of going to Jackson, Miss.,
for medical treatment. He reached Jackson, and died
three days later; that is to say, on the 23d day of May,
1910. On the day that Jones left Collins, his wife went
to the collector for the local lodge at the request of her
husband, it seems, and gave him one dollar and seventy-
five cents in payment of all dues up to April. This col-
lector received the money, but stated at the time it was
received, according to his testimony, that he would send
the amount of the premium to the grand lodge, but that
it would not straighten out the insurance unless it should
be accepted. At the time it seems that the grand lodge
did not know of the illness of Jones, but the collector
did. When the collector sent the money to the grand
lodge, he did not explain that Jones was then ill. The
officer of the grand lodge to whom the dues were sent
notified the collector that he must get fifty cents more to
make the full amount required to reinstate; that is to
say, instead of one dollar and seventy-five cents, he
should have collected two dollars and twenty-five cents.
In the meantime Jones died. Application was made for
proofs of death, which were declined to be furnished, on
the ground that nothing was due under the policy. After
the burial of Jones the collector accepted the remaining
fifty cents which had not been paid, but it seems that this
was never sent to the grand lodge, but tendered back to
the appellee after the Grand Lodge denied liability.

While section 3, page 37, of endowment laws, requires
that the sum of two dollars and twenty-five cents be paid
before reinstatement can be had, after failure to pay
premiums on the 10th day of the month that same be-
come due, and while it appears that only the regular
premium of one dollar and seventy-five cents was ten-

dered to and received by the collector, it further appears that both of them thought she was paying the proper amount in order to pay all arrears due, and the above amount was paid and received in that belief. If either was bound to know the correct amount, it was the agent of the insurance company, and not the person paying the premium. In the absence of proof that she knew she was not paying enough, and with this knowledge deliberately misled the collector, and refused to pay the proper sum for reinstatement, the mistake is the mistake of the collector in not demanding the right amount, and, if either must suffer, it must be the insurance order, and not the insured.

The by-laws and constitution of the order seem somewhat conflicting in many of their provisions. When the constitution and laws of the order are being construed in a controversy growing out of an insurance policy, they are to be construed most strictly as against the insurer and in favor of the insured. The constitution and by-laws of this order are relied upon to defeat this insurance policy, and no different rule applies in the construction of insurance policies issued by fraternal orders than is applied in construing all other policies of insurance. The by-laws and the constitution permitted Jones to reinstate himself by paying two dollars and twenty-five cents within three months from the default, whether in good or bad health. We will undertake to show later on that such is the law controlling the endowment rank, though it is different as to sick benefits.

Our attention is called to many clauses found in the constitution and by-laws of the order. We will now notice these citations. Our attention is first called to section 1, page 15, of the constitution of the order. This section provides that: "A member who is in arrears to his local lodge to the amount of three dollars, dues and fines, assessments and endowments, and has been notified to pay the same at a stated time, shall be suspended

from his lodge by the chancellor commander in open session, and a record of such suspension shall be entered on the minutes of the lodge; or if any member shall fail to pay his endowment on or before the 10th day of the month of the first quarter as set forth in the endowment law, such member shall stand suspended: Provided, however, that no lodge can suspend a member for the non-payment of their local lodge dues or endowment, without first having notified him, with the seal of the lodge attached.'' This section makes it imperative that before any member can be suspended for any dues of any kind he must have notice with the seal of the lodge attached, and his suspension must be by the chancellor commander in open session, and a record of the suspension must be entered on the minutes of the lodge. This requirement is a requirement of the constitution of the order. No such action was taken in regard to Eugene E. Jones, the deceased member. He was never notified or suspended in open session. It follows that on the 20th day of May, when this payment of dues was made by Jones' wife, although in default of premiums, he was still a member of the order and entitled to reinstatement at any time.

But it is argued that, if it be conceded that he was entitled to be reinstated, he did not pay what was required for reinstatement, and that his reinstatement could only date from his recovery, and, since he did not recover, the order was not bound to pay anything under the policy. In this connection our attention is called to section 2, article 10, page 27, entitled ''Benefits.'' This section is found under the constitution for the government of subordinate lodges. In order to have a full understanding of these laws, it is well to call attention to the fact that the various sections cited to us are dealing with different duties of the order. Section 1, on page 15, which we have heretofore referred to, is a section of the constitution of the order in accordance with which all consti-

tutions and by-laws made for the government of subordinate lodges must agree. If the constitution and laws of the subordinate lodges conflict with the above section of the chief and controlling law of the order, they have no force. If this was not the case, the subordinate lodges could destroy the order. Now, the above section of the constitution prohibits the suspension of any member for the non-payment of his endowment when due, unless such member shall have notice with the seal of the lodge attached. Any law of the order which conflicts with this is a nullity, whether it be a by-law of the grand lodge or a subordinate lodge, so long as this section of the constitution stands.

While it is true that section 2, article 10, page 27, of the constitution for subordinate lodges provides that: "A member, while receiving weekly benefits from his lodge, cannot become in arrears so as to debar him therefrom; the relief committee being authorized to pay the master of finance from the amount drawn for his weekly benefits a sum sufficient to prevent his becoming in arrears for the lodge the amount of three months' dues. If a knight shall become in arrears for one dollar and fifty cents in his fines, dues and assessments, and pay the same while he is sick or disabled, his good standing shall date from his recovery"—yet this section has nothing to do with the endowment rank. It is dealing with benefits which may be received by a member while alive, for the purpose of relieving suffering or distress. The benefits here spoken of are benefits distributed by the lodge in its fraternal capacity and not as an insurance organization. These benefits may be received by a person who has no endowment in the order. The above by-law is a valid one, when applied to the cases comprehended within its terms. It does not conflict with the constitution of the general order, because it does not attempt to suspend a member. The local lodge may regulate when and how it will distribute its benefits.

The deceased was a member of the endowment rank, and, since we have shown that his rights under the insurance policy are not affected by the laws before cited, we come now to consider the by-laws governing that rank. This rank is controlled by section 3, p. 37, which provides that: "Every knight in the order shall pay to the endowment bureau the sum of seven dollars per annum, payable in advance, in quarterly payments, in addition to his regular monthly dues. It shall be the duty of the chancellor commander of the lodges in this grand jurisdiction to forward to the grand master of exchequer on or before the 1st day of January, April, July and October of each year the sum of one dollar and seventy-five cents for every member borne upon their lodge rolls, together with the roster of their membership of the lodge and its location and number. Any lodge or member, failing to forward its report and taxes on or before the tenth day after the same shall have become due, because of such failure forfeits his right to the benefits of the endowment law, under section 1, article 2, of the endowment law, and the lodge or lodges, member or members so suspended may reinstate it or themselves by payment of two dollars and twenty-five cents per head: Provided, however, said lodge or members shall not have been out of the order for six months. . . . Provided, that when a member has been suspended for three months only, a certificate of his good health must be issued by the chancellor commander and two other members of the lodge before reinstating."

If the section quoted above means that a lodge or member is *ipso facto* suspended on failing to forward "its report and taxes on or before the tenth day after same shall have become due," and without notice and suspension as is required by section 1, page 15, of the constitution of the entire order, then it is to that extent, at least, a nullity. Jones never had been suspended from the order for any period of time. He was entitled to

reinstate in the endowment rank under section 3, page 37, of the endowment law at any time by paying two dollars and twenty-five cents, whether in good or bad health. It was not necessary for him to have "a certificate of good health issued to him by the chancellor commander and two other members of the lodge before reinstatement," because this clause only applies to suspended members, and Jones was not a "suspended member" under the constitution of the order. Only one dollar and seventy-five cents was paid for reinstatement as a matter of fact; but this was the fault of the representative of the lodge, and not the fault of the representative of the insured.

This case depends mainly on its facts. The trial court heard the case as judge and jury, and in our judgment was correct in awarding judgment for plaintiff in full amount of policy.                                  *Affirmed.*