SOVEREIGN CAMP, WOODMEN OF THE WORLD, v. PUTNAM.   (No. 289.)

(Court of Civil Appeals of Texas. Beaumont. July 13, 1918. On Motion for Rehearing, Dec. 11, 1918.)

1. INSURANCE ⬅755(3)—FRATERNAL BENEFIT INSURANCE — INCREASE IN ASSESSMENTS BY ENTERING PROHIBITED OCCUPATION—FAILURE TO DEMAND—ESTOPPEL.

Where collector of fraternal order's local organization failed to demand higher assessments from member, who had notoriously entered occupation of retail liquor dealer, requiring, under by-laws, payment of higher assessments, his acts having misled member, order will not be permitted to take advantage of default by insisting on forfeiture after death.

2. INSURANCE ⬅755(1)—FRATERNAL BENEFIT INSURANCE—WAIVER OF BY-LAWS BY LOCAL CLERK OR ORGANIZATION—STATUTE.

In view of Rev. St. 1911, art. 4847, fraternal order may by by-law curtail and circumscribe right of local clerk or local organization of order to waive provisions of by-laws.

3. ESTOPPEL ⬅52 — DISTINCTION FROM "WAIVER."

Though "waiver" and "estoppel" are often used indifferently, there is a distinction, in that waiver presupposes full knowledge of a right existing, and intentional surrender or relinquishment, not true of estoppel, which arises where, by fault of one, another has been induced to change his position for the worse.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Estoppel; Waiver.]

4. INSURANCE ⬅755(1)—FRATERNAL BENEFIT INSURANCE — ESTOPPEL — APPLICATION OF PRINCIPLE TO ORDER.

Fraternal insurance association, acting through officers and local agents, is as much subject to operation of principle of estoppel, despite by-laws prohibiting any local clerk or organization from waiving provisions, as any other association, or as an individual.

5. INSURANCE ⬅821—MUTUAL BENEFIT INSURANCE — JUDGMENT — DEDUCTION OF ASSESSMENTS DUE.

In suit by widow of member of fraternal order, trial court, having held order estopped, by collection of assessments through local agent, to declare forfeiture on account of failure to pay higher assessments due after change in occupation, properly deducted, from amount due under certificate, amount of additional assessments member should have paid.

Appeal from District Court, Jefferson County; W. H. Davidson, Judge.

Action by Mrs. Pauline Putnam against the Sovereign Camp, Woodmen of the World. From a judgment for plaintiff, defendant appeals. Affirmed.

Smith & Crawford and John Hancock, all of Beaumont, for appellant.

Lipscomb, Gordon & Lipscomb, of Beaumont, for appellee.

CHILTON, Special Judge.   In the year 1899 O. W. Putnam became a member of Curley Pine Camp, Woodmen of the World, at Beaumont, Tex., and on May 15th of that year, there was issued to him by the Sovereign Camp, Woodmen of the World, incorporated and having its principal office at Omaha, state of Nebraska, a beneficiary certificate, by the terms of which the said Putnam, as a member of the fraternity, was entitled to participate in the beneficiary fund to the amount of $3,000, together with the additional sum of $100 for the placing of a monument at his grave, all of which was payable upon his death to the beneficiary named in the certificate, his wife, Mrs. Pauline Putnam. O. W. Putnam died in the month of June, 1916; his death being caused by typhoid fever. After the death of O. W. Putnam, payment of amount called for by the certificate was demanded of the Sovereign Camp, and was refused for the reason hereafter stated, whereupon this suit was instituted by Mrs. Pauline Putnam, the appellee herein.

In defense, it is asserted and claimed that the beneficiary certificate issued to said O. W. Putnam was null and void at the time of his death, and had been for some years prior thereto, and liability thereon by said Sovereign Camp is denied, because Putnam had not, for some nine years prior to his death, paid the proper amount of assessments and dues as required by the by-laws of the fraternity. It is shown that under the by-laws, when a member enters into any one of certain occupations, called "prohibited occupations," he is required to notify the clerk of the local camp of the fact, and that thereupon the assessment of such member shall be increased and shall be paid, and, upon failure of such member to pay the increased assessment after entry into one of the so-called prohibited occupations, his beneficiary certificate becomes forfeited. The saloon business, or retail liquor business, is one of these occupations, requiring the giving of notice and the payment of an increased assessment. The exact language of these provisions of the by-laws will be noticed and referred to more fully further on in this opinion.

At the time of his admission as a member and the issuance of the beneficiary certificate, Putnam was a railroad clerk or cashier at Beaumont. In 1907, he entered the retail liquor business, at that time becoming proprietor of what was known as the Manhattan Bar, located on Pearl street, in the city of Beaumont, and remained in said business up to the time of his death. His entry into and continuance in the business was open and notorious, and was well known to the clerk of the local camp and the members thereof generally; his place of business being only a short distance from the lodge rooms of the local camp. The clerk of the local camp, in the performance of his duty as collector for the Sovereign Camp and local camp, from time to time and in the usual way, called at the saloon of Putnam and collected from him the ordinary or customary dues and assessments, or in his absence collected such dues and assessments

from Putnam's employés, who had instructions to pay the same upon demand. No additional payments or increased assessments were demanded of Putnam by reason of his being in the saloon business, nor were any such ever paid by him. This was the only life insurance which Putnam carried, and he seemed to value it highly, and all the circumstances indicate that he was at all times ready, able, and willing to comply with all requirements and demands necessary to preserve the rights of himself and his beneficiary, and keep the insurance in force and effect. From the time he originally became a member, until his death, the records and minutes of the order show him as a member in good standing of the local lodge, Curley Pine Camp, and that his certificate was in full force and effect and in good standing with the Sovereign Camp. It was affirmatively shown that none of the Sovereign Camp officers ever had any actual knowledge of Putnam's entry into the saloon business, or that he was engaged in that business, except this has no application to former Council Commander J. C. Root, who had been dead for about three years prior to the trial, and as to knowledge of these facts on his part no proof was made. It is not shown that the local camp clerk ever notified the Sovereign Camp, or any of its officers, of Putnam's occupation, until after his death. No particular circumstance, that we can see, is offered which would tend to show that the deceased Commander Root had any actual knowledge about Putnam's occupation, and, considering all the circumstances, we think it can be more fairly assumed that he, like the other officers, did not have such knowledge, than otherwise, and so we will treat the matter with that view.

By the terms of the certificate, the by-laws of the order in effect at the time of its issuance, and those regularly adopted thereafter, are made a part of the contract for the insurance. The right of the plaintiff in this case to recover, and the liability of the defendant, must depend upon the proper interpretation of such by-laws, and the effect and operation to be given to the acts and conduct of the parties when considered in connection with the by-laws. Roth v. Travelers' Protective Ass'n, 102 Tex. 241, 115 S. W. 31, 132 Am. St. Rep. 871, 20 Ann. Cas. 97; 29 Cyc. p. 66.

We herewith quote three sections of the by-laws, which were in effect at the time of the admission of the member Putnam into the association:

Section 42 (Laws of 1897): "Persons engaged in the following classes of business or employment shall not be admitted; employés in ammunition factories, glass blowers, balloonists, plow grinders, brass workers, saloon keepers, bartenders, and those engaged in the retailing of intoxicating liquors as a beverage; also persons employed in making, compounding, distilling, rectifying, or brewing of malt, spirituous, vinous, or intoxicating liquors."

Section 65 (Laws of 1897): "Change of occupation by any member to a prohibited one, shall not invalidate his certificate, but his rate of assessment shall be increased thereafter by adding 20 cents to such assessment upon each $1,000 or less named in his certificate while he is so engaged."

Section 65, third paragraph (Laws of 1897): "The nonpayment of the additional 20 cents, or the increased rate referred to, shall work a suspension of the member the same as if the original amount were not paid and upon the same conditions, and during such suspension his certificate shall be void and no benefits shall be payable until he shall reinstate himself in the same manner as if the original assessment had been unpaid and he was suspended therefor."

The amount of the additional assessment by reason of the entry of a member into one of the prohibited employments, as specified in section 42 of the by-laws as above quoted, was afterwards increased from 20 cents, as provided in section 65 above, to 50 cents for each $1,000 of insurance called for by the certificate, and also a number of additional prohibited employments were added to those mentioned. It appears that the only other material change of the above by-laws during the membership of Putnam was by an amendment in 1907 to section 65 above, by the terms of which a member, changing his occupation to one of the hazardous or so-called prohibited occupations, was required to give notice to the clerk of his camp of such change within 30 days thereafter.

One of the by-laws of the order with reference to the payment of assessments and dues is as follows:

Section 109: "Every member of this order, unless otherwise notified by the clerk of his camp in the manner herein provided, shall pay to the said clerk every month one assessment in the beneficiary fund, together with one monthly payment to the Sovereign Camp or Beneficiary Head Camp, general fund dues and camp dues as levied, also any additional assessments for beneficiary fund or special general fund which may have been ordered by the Sovereign Camp or Beneficiary Head Camp, as the case may be; and if he fails to pay either on or before the first day of the month following, he shall stand suspended and during such suspension his beneficiary certificate shall be void."

Another of the by-laws, which is rather long, and we will not quote in full, provides, among other duties of the clerk of the camp, that he shall have charge of the records, attend to correspondence and accounts, keep minutes of all proceedings of every meeting of the camp, and notify the camp of all members becoming in arrears. He is made the recipient of all moneys due, and required to issue receipts therefor, and to make all reports and mail and deliver all notices required of him by the Sovereign Camp or Head Camp officers, and to remit all assessments and general fund dues to the Sovereign Camp, and for the faithful performance of these duties, a bond is required of the camp clerk.

There can be no question that the clerk of the local camp is the duly authorized agent of the Sovereign Camp for the collec-

tion of any and all dues and assessments chargeable to any member. Upon the receipt of notice by the clerk of the local camp at Beaumont of the change of occupation on the part of Putnam, it was the duty of such clerk to add to the assessments to be paid by said Putnam the additional amount as required by the by-laws, and to collect the amount along with the ordinary and regular assessments and any special assessments made by the Sovereign officers or Camp and local camp.

[1] These dues and assessments are subject to changes from time to time in amount, and it could hardly be expected as a practical proposition that each and every member of an order such as this, having, it seems, some 800,000 members, should carefully keep track at all times of the exact amount due, and stand the hazard of a forfeiture of his certificate in case he fails to pay the exact amount, when such failure is not attributable to any intention on the part of the member to evade the payment of any proper amount due, but to the fact that the authorized collector of the Sovereign Camp and local camp failed to request and demand the correct amount. In this case, the collector of the dues and assessments for the Sovereign Camp having demanded and received of Putnam a certain amount, which it was understood represented the full amount due, and having by his acts in that connection misled the member, Putnam, the Sovereign Camp is not in a position to, and will not be permitted to, take advantage of the default by afterwards insisting upon a forfeiture. Sov. Camp, W. O. W., v. Fraley, 94 Tex. 200, 59 S. W. 879, 882, 51 L. R. A. 898; McCorkle v. Tex. Benevolent Ass'n, 71 Tex. 149, 8 S. W. 516; Simmons v. Modern Woodmen, 185 Mo. App. 483, 172 S. W. 492, 495.

The defendant in this case in its answer specially pleads:

"That said O. W. Putnam failed and refused to notify the clerk of his camp, Curley Pine Camp, No. 23, Woodmen of the World, Beaumont, Texas, that he had become a saloon keeper and engaged in the retailing of intoxicating liquors as a beverage, and failed and refused thereafter, while so engaged, to pay to said clerk an additional sum of 50 cents, or any other sum, in addition to the ordinary and regular dues and assessments payable by one of Putnam's age and year of admission to the order."

We think in this allegation the defendant strikes at the very gist of this whole matter, and that it was necessary to substantiate these allegations in order to defeat plaintiff's right to recover, and this the defendant failed to do.

But, presenting the matter in another view, it is pleaded by defendant and earnestly urged before this court that the clerk of the local camp is without the power or authority to waive any of the provisions of the by-laws of the order, and that the right of the Sovereign Camp to insist upon the forfeiture cannot be cut off by the actions of the local clerk, which in effect amount to a waiver of the terms of the insurance certificate and the by-laws. In this connection our attention is called to the following by-laws:

Section 67: "No officer, employé, or agent of the Sovereign Camp, Beneficiary Head Camp, or of any camp has the power, right, or authority to waive any of the conditions upon which beneficiary certificates are issued, or to change, vary, or waive any of the provisions of this constitution and laws. Each and every beneficiary certificate is issued only upon the conditions stated in and subject to this constitution and laws."

Section 92: "The clerk of the camp shall not, by acts, representations, waivers, or by vote of his camp, have any power or authority not delegated to him or to the camp by the constitution and laws of the order to bind the Sovereign Camp or his camp."

[2] The first by-law just mentioned is quite broad and sweeping in its restrictions, and it occurs to us there might be some question as to its effectiveness, when applied to the chief officers of the order having general authority to conduct and direct its business; but, however this may be, there can be no doubt as to its validity and effectiveness in so far as it curtails and circumscribes the right of a local clerk or local camp to waive provisions of the by-laws of the order. This right is expressly recognized in the provisions of the Texas laws relating to the incorporation within this state of fraternal beneficiary societies and the admission of such societies incorporated elsewhere into the state for the transaction of business. Rev. Stat. 1911, art. 4847.

We have noticed a number of cases, containing by-laws about as positive as the above, prohibiting the waiver of provisions and requirements by local officers, wherein the courts seem to have held that nevertheless such officers may waive certain material provisions and requirements of the insurance certificate and the constitution and by-laws of the society; but we doubt the soundness of these decisions and think they go too far along that line. We hardly think that a local officer of such a society, in the face of such restrictions, can be permitted to waive provisions of the insurance contract and the constitution and by-laws of the society, referring now to the term "waiver" in its true sense.

[3] The terms "waiver" and "estoppel" are often used indifferently in the same sense, as if they were interchangeable terms; but there is a distinction which it is often important to keep in mind. Waiver presupposes a full knowledge of a right existing and an intentional surrender or relinquishment of that right. 29 Am. & Eng. Enc. Law, pp. 1091–1093. It contemplates something done designedly or knowingly, which modifies or changes existing rights, or varies or changes the terms and provisions of a contract; but not so with estoppel.

"Waiver is the voluntary surrender of a right; estoppel is the inhibition to assert it from the mischief that has followed. Waiver involves both knowledge and intention; an es-

toppel may arise where there is no intent to mislead. * * * Waiver' involves the acts and conduct of only one of the parties; estoppel involves the conduct of both. A waiver does not necessarily imply that one has been misled to his prejudice, or into an altered position; an estoppel always involves this element. * * * Estoppel arises where, by the fault of one party, another has been induced, ignorantly or innocently, to change his position for the worse in such manner that it would operate as a virtual fraud upon him to allow the party by whom he has been misled to assert the right in controversy." 40 Cyc. pp. 256, 257.

[4] The principle of estoppel in equity stands upon the very foundations of right and fair dealing. It considers and weighs the conduct of men in their dealings with each other, and gives that effect and meaning to their actions which common sense and justice dictate. A fraternal insurance association, such as appellant, is as much subject to the operation of its principles as any other association of persons or as an individual.

The receiving of notice of Putnam's change of occupation and the collection of additional assessments resulting thereby were among the powers vested in the local camp clerk under the by-laws, and the Sovereign Camp cannot evade responsibility for, or escape the consequence of, acts done by him which are necessarily and inseparably connected with the performance of the duties devolving upon him. The local clerk had notice of all facts relating to, affecting, and controlling the amounts payable by Putnam, and demanded and accepted certain sums as being sufficient, and Putnam relied upon this as being correct, and the Sovereign Camp is estopped from claiming a forfeiture for insufficient payments. Grand Lodge, K. of P., v. Jones, 100 Miss. 467, 56 South. 458; Simmons v. Modern Woodmen, 185 Mo. App. 483, 172 S. W. 492, 495; Trotter v. Grand Lodge, 132 Iowa, 513, 109 N. W. 1099, 7 L. R. A. (N. S.) 569, 11 Ann. Cas. 533, and notes; Illinois Bankers' Life Ass'n v. Dodson (Tex. Civ. App.) 189 S. W. 992–995; Peterson v. Grand Lodge, 36 S. D. 539, 156 N. W. 70, L. R. A. 1916F, 751, and notes.

It is rather remarkable that matters should drift along as shown in this case for such a number of years. Both Putnam and the clerk of the local camp were acting in absolute good faith; each thinking and believing at all times that the full amount necessary and required was being paid and collected. There is not the slightest intimation of any intentional wrong on the part of either, or any purpose to evade the payment of any proper amount due, or on the part of the clerk not to collect all amounts due. The provisions of these by-laws with reference to the increase of assessments refer to quite a number of occupations of a very general character, and it would seem that they would be of frequent application, and often called to the attention of the members of the order, and especially to the attention of the clerk, who is charged with the duty of collecting the increased assessments; but evidently in this instance these requirements in their application to Putnam were entirely overlooked. If any collusion had been shown between the clerk and Putnam, by which it was understood that Putnam was to be relieved of any amount of dues or assessments properly chargeable to him, or had there been an understanding between them by which the clerk undertook to waive the requirements of the by-laws, or even if it were shown that Putnam knew as a matter of fact that he was not paying the amount of dues and assessments required by the terms of the by-laws, then we would have a different case before us.

[5] The trial judge, before whom this case was tried without a jury, in the judgment rendered deducted from the amount sued for, and shown to be due under the terms of the beneficiary certificate, the total amount of the additional assessments which O. W. Putnam should have paid while engaged in the saloon business, and we believe this to be a lawful and fair disposition of the rights of the parties.

It follows, from what we have said above, that we are of the opinion that the judgment of the trial court should be affirmed; and it is ordered accordingly.

## On Motion for Additional Findings of Fact.

Appellee has filed a motion herein asking the court to make some additional findings of fact. We cannot adopt the findings as proposed and set forth in the motion, as the same contain statements and inferences which we do not believe to be altogether warranted. With reference to the points mentioned in the motion we make, from the record, the following findings:

No specific demand was ever made by Mrs. Pauline Putnam for the return and payment to her by the Sovereign Camp of the assessments collected from O. W. Putnam during the time he was engaged in the saloon business. After the death of O. W. Putnam, and prior to the institution of this suit, the attorneys representing the Sovereign Camp offered to pay Mrs. Putnam $573.90; but the offer was accompanied by the condition that said amount should be accepted in full satisfaction of any claim of Mrs. Putnam against the Sovereign Camp, and the offer was refused. As to whether or not this amount represented as much as the total of these assessments as calculated at the time, or something more than the total of these assessments, is not clear; but it is not made to appear that objection was then made to the offer as not representing the true amount of the assessments collected, and held by the Sovereign Camp. In its answer to this suit the Sovereign Camp tendered to plaintiff the amount of the assessments collected from Putnam after his entry into the saloon business, and the tender was refused, with-

out any objection being made at the time as to the form or the amount of the tender.

The by-laws with reference to forfeiture of a beneficiary certificate provide that upon failure of a member to pay assessments when due, he is thereby suspended, and his certificate becomes forfeited, and null and void, and no affirmative action on the part of any of the agents or officers of the association, such as giving notice of suspension and forfeiture, or anything of that kind, is required in order to bring about the suspension and complete the forfeiture. The beneficiary certificate, issued to and held by Putnam, provided for the forfeiture thereof in the above manner. Upon failure of a member to pay the increased or added amount by reason of engaging in one of the so-called prohibited occupations as set forth in the by-laws, such member is, under the terms of the by-laws, suspended, and his certificate forfeited in like manner as if he failed to pay the regular and ordinary assessments, as above mentioned.

The by-law with reference to the reinstatement of a suspended member is as follows:

Section 115 (By-Laws 1897): "Should a suspended member personally appear and apply for reinstatement within three months from the date of his suspension and pay all arrearages, if in good health, he shall be restored to membership, and his beneficiary certificate again become valid, as soon as said payment shall have been received and recorded by the clerk of his camp."

Another of the by-laws is in words as follows:

Section 68 (By-Laws 1915): "When a beneficiary certificate has been in force for five consecutive years immediately preceding the death, while in good standing, of the member holding the same, the payment thereof shall not be contested on any ground other than that his death was intentionally caused by the beneficiary or beneficiaries, or by the hands of justice, or from the direct result of drinking intoxicating liquors, or from the use of opiates, cocaine, chloral, or other narcotic or poison, or shall die while engaged in war, except in defense of the United States of America."

The complete text of the constitution and by-laws in printed form make up a book of about 75 pages, with about 278 words to the page.

On Motion for Rehearing.

In their argument on rehearing counsel for appellant have cited and quoted from a number of opinions by other Courts of Civil Appeals of this state, particularly the following: Sovereign Camp, Woodmen of the World, v. Rothschild, 15 Tex. Civ. App. 463, 40 S. W. 557; United Moderns v. Pike, 76 S. W. 776; Bennett v. Sovereign Camp, Woodmen of the World, 168 S. W. 1027; Grayson v. Grand Temple, 171 S. W. 489. And it is contended, in effect, that our decision in this case is in conflict with the principles approved in these cases. We have examined and considered thoroughly all of the above cases, and we think it sufficient to say that all of them are cases in which the member of the order or association, which it was sought to hold liable, had merely failed to pay the regular monthly assessments and dues, and the certificate of the member had been forfeited for that reason, and no facts were presented and established which were sufficient to excuse the default, or to warrant the courts in relieving against the forfeiture incurred.

The first case above mentioned, Sovereign Camp, Woodmen of the World, v. Rothschild, is quoted at some length, and evidently much relied upon, by counsel for appellant. We think that it may be taken as illustrative in a general way of the nature of the other cases cited and quoted. The essential facts of that case, very briefly stated, were these: Rothschild, the member, was delinquent in the payment of his dues for two months, May and June, and under the terms of the by-laws of the association his certificate of insurance had become forfeited, and could be reinstated only by the payment of all delinquent dues. Some time in July following, and the day previous to his death, the member, Rothschild, paid to the camp clerk $2 for one of the months for which he owed, May, but still left unpaid and delinquent the dues for the month of June, which he said he would pay in a few days. The camp clerk accepted the payment of the May dues without comment. It was contended that the camp clerk, by accepting the dues for May, and remaining silent when the member, Rothschild, promised to pay in the future the dues for June, had thereby led the member, Rothschild, to believe that his beneficiary certificate was still in force and effect. The circumstances showed that the member understood his situation and rights in the matter, and he was not in any way misled by the action of the camp clerk. Truly, as said by Judge Finley in holding the association not liable on the certificate, "there is no ground upon which the claim of estoppel can rest."

In this case now before us, the camp clerk was the person to give notice to, upon Putnam's change of occupation. For receiving such notice the camp clerk was the plenary agent of the association. Upon being advised of that fact, it was no doubt his duty to notify his superior officers that Putnam had entered the saloon business, just as he should give such notice when a member became a locomotive fireman, a plow grinder, a grindstone turner, a brass worker, or took up any one of the other occupations calling for an increase in the amount of dues payable. The local clerk was the proper person to demand of Putnam and receive the amount of dues payable, and for nine years demands and receives from Putnam certain amounts as being all that was due. When it is too late to remedy matters, after the death of Putnam, the oversight or omission of duty

of the camp clerk or clerks is quickly found out, the mutual mistake of the parties running through the years is uncovered, and then it is claimed that the position and rights of the association, under the strict letter of the by-laws, are not and cannot be in any way affected, and the onerous burden of forfeiture is to be cast upon the member, who is in truth the less at fault. To approve of such a result would be equivalent to holding that an association like this is exempt from any of the consequences ordinarily arising from the acts of an agent and authorized representative, such as would be recognized and given effect in all other relationships of life, and such a proposition we cannot assent to. See Supreme Lodge, Knights of Pythias, v. Withers, 177 U. S. 260, 267, 20 Sup. Ct. 611, 44 L. Ed. 762, 765.

Counsel for appellant have discussed at some length the general principles on which these fraternal benefit societies, such as appellant, are organized and operate, and seek to found some distinction along that line. We believe we fully understand and appreciate the theory of mutuality of obligation underlying the organization and existence of these societies, with the constitution and by-laws as the bound of union and the measure of each individual member's obligation to all other members, and of their obligation to him. But after all is said, and looking at the laws and rules of this society now before us, the matter resolves itself again simply to this: The camp clerk has been constituted, by all members, we will say, as the person to perform certain special functions within the society. He is to receive notice of changes of occupations; he is to receive and collect dues and assessments; it is the clerk's particular business to look after these things. The responsibility must rest somewhere, and it has been placed in the camp clerk. It is then only natural and proper that the individual members will rely to a large extent, if not entirely, on the camp clerk in that connection, and surely the society as a whole should bear the responsibility for the acts of the clerk which are exactly in line with his duty. The clerk cannot vary, change, or modify the contract between the member and the society, or excuse its performance by waiving any of the conditions or provisions thereof, it is true; and in this case the clerk and the member were not undertaking to do this, but, on the contrary, were making an honest effort to comply with its every term. The society must be held to be concluded from long afterwards bringing up the question as to the acts of the clerk, in so far as the manner of performing those acts are involved, and the correctness and accuracy of his acts are concerned, and should not be permitted to take advantage of his mere mistakes and omissions.

The motion for rehearing is overruled.

⬅➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes