## THE PRÆTORIANS v. KRUSZ.

### No. 10899.

Court of Civil Appeals of Texas. Dallas.

Feb. 24, 1931.

Rehearing Denied March 28, 1931.

T. W. Davidson, of Dallas, for appellant.

Leake, Henry, Wozencraft & Frank, of Dallas, for appellee.

LOONEY, J.

The Prætorians, a fraternal benefit society, with its home office in Dallas, managed generally by a body of officers called the "Supreme Senate," and maintaining local councils in charge of an officer known as "Worthy Recorder," issued to William J. Krusz a certificate or policy of life insurance, agreeing to pay the sum of $5,000 to Mae Krusz, wife of insured, immediately upon receipt of satisfactory proof of his death while the certificate or policy was in force.

Insured died on January 18, 1930, satisfactory proof of death was made, and, on payment being refused, this suit was instituted by the beneficiary to recover upon the policy.

The defendant contended below, and contends here, that, at the time of death, the policy had lapsed by reason of the failure of insured to pay monthly dues, or premiums, according to the contract. Plaintiff replied that the dues were paid soon after being delinquent, were accepted and retained by defendant, the forfeiture was waived, and thereafter, by certain unequivocal acts, defendant recognized the continued validity and existence of the insurance contract, and estopped itself to insist upon forfeiture as a defense to the suit.

The case was tried before the court, without a jury, resulting in judgment in favor of plaintiff for the full amount of the policy, with interest; from which this appeal is prosecuted.

The pertinent facts relied upon by the parties, in support of their respective contentions, will be found in the following statement: The certificate or policy provides that: "The insured has the privilege of paying dues hereunder monthly. * * * If the insured elects to pay monthly, such payments shall be due on the first day of each and every calendar month and must be paid by the twentieth of each month. * * * Failure to make any payment as provided shall automatically lapse this certificate. * * * Upon lapse of this certificate by failure to pay dues, the same may be reinstated by submitting satisfactory evidence of good health and insurability and upon payment of all arrears, together with dues for the current month. * * * No change, modifications or alteration of this certificate shall be made unless endorsed thereon by the president, vice-president or the secretary of the Prætorians. The Prætorians shall not be bound by any promise or representation made by any person unless made in writing by one of said officials. It is agreed by the insured holding this certificate that the certificate, charter or articles of incorporation, the constitution and laws of The Prætorians, and the application herefor, and the medical examination signed by the appellant, with all amendments to each thereof, shall constitute the agreement between The Prætorians and the insured."

The pertinent provisions of the constitution and laws of the order are these:

Section 8 of article 17, in so far as is material, reads: "Each council shall annually, at the first meeting in February, nominate a Worthy Recorder, whose nomination shall be certified to the Board of Directors. * * * The Worthy Recorder shall collect all dues and keep a record of the proceedings of the council. * * * Sec. 9, Worthy Recorders must close all collections not later than 12 o'clock noon of the twentieth day of each month. The Recorder must send in his report to the Supreme Secretary without delay with a draft, money order or cashier check to cover. * * *"

Section 2 of article 20 reads: "All dues shall be payable for each month on or before the first day thereof and must be made not later than the 20th. Sec. 3. It shall be the duty of every member to see that his dues are paid in time to his Worthy Recorder. * * * Members failing to pay dues on time in accordance herewith shall lapse immediately without notice, and all rights, privileges and benefits shall cease at once, except as to any paid up and extended values to which they may be entitled as hereinafter provided. * * *"

Section 1, art. 26, on the subject of reinstatements, provides: "Recorders have no authority to reinstate members who have

lapsed. * * * Sec. 2, Any member whose dues shall not be paid as herein provided shall immediately lapse. To effect reinstatement when lapsed for less than 30 days, a member, while in good health, may deposit with his Worthy Recorder all unpaid dues including those for the current month, and when the Worthy Recorder has satisfied himself that the member has been in continuous good health since the day of lapse, and when the Supreme Senate has received and accepted such dues the reinstatement shall be effective, but not otherwise. Sec. 3, To effect reinstatement, when lapsed for more than 30 days and less than six months, a member shall furnish a certificate of health signed by him and a like certificate of a medical examiner on form prescribed by the Supreme Senate, and shall pay to his Recorder all dues, including those for the current month. Reinstatement shall not be effective until such statements have been approved by the president or secretary, and notice thereon mailed to the member."

The record discloses that insured failed to pay dues for November, 1929, and the policy automatically lapsed; he was not reinstated during the month of December, nor did he pay dues during that month; on January 7, 1930, he became ill with appendicitis, on the 13th was taken to a hospital for an operation, on the 14th he was operated upon, but, prior thereto, his brother-in-law, James G. Munsford, at the instance of the beneficiary, wife of insured, paid the delinquent dues for both November and December, at the local council of the Prætorians, of which insured was a member; the dues were received by the local recorder; a receipt therefor in the usual form was given; no question was asked as to the condition of health of insured; no demand was made for certificates of health, as provided in the by-laws; and, not being asked in regard to the matter, Munsford volunteered no statement as to the illness of insured.

On January 15, 1930, the day following receipt of these dues, the recorder mailed to insured the customary notice, demanding payment of the January dues, not then delinquent, as follows:

"Dallas, Texas          January 15, 1930
"Worthy Prætorian:
"Please send Prætorian dues for the month of January, 1930, and oblige. Payments are due on the first and should be paid before the 20th of each month."

In compliance with this demand, Munsford, for insured, paid these dues to the recorder on January 18, 1930, prior to but on the day of the death of insured.

The method of handling lapses and reinstatements is disclosed somewhat by the fact that the certificate in suit was automatically lapsed in February, March, April, May, June, July, August, September, and October, 1929, for failure of insured to pay dues promptly, but, as they were paid in each instance within a few days after the lapse, the recorder, it seems, accepted payment without inquiry or any showing by insured as to his continuous good health. Mr. Rogers, the recorder, testified that, when a member is more than 30 days delinquent, his instruction was to demand health certificates, and as a rule he complied, but not uniformly, that in the rush of business sometimes the matter was overlooked; that after a lapse, he endeavored to induce the member to reinstate, his instruction being to collect all money due the order; that he knew when he accepted payment of November and December dues, without demanding health certificates, the policy had lapsed; and thereafter, on January 15, 1930, mailed to insured notice demanding payment of dues for the month of January, 1930, collected same, and after the death of insured reported the collections and remitted the amount, $15, to the home office. The dues were retained by appellant, and no effort was made to return same, until paid into the registry of the court, after the institution of this suit.

As before stated, these facts constitute the basis for the respective contentions of the parties.

The contentions of appellant may be reduced to these: That the certificate sued upon having lapsed for nonpayment of dues, insured was ineligible for reinstatement during his final illness; that the recorder of the local council, of which insured was a member, was not authorized to revive the dormant contract; that no act of his performed in line of duty could be given the effect of waiving the forfeiture; and that, under the facts, appellant is not estopped to insist upon same as a complete defense to the suit.

█ It is obvious that Worthy Recorder Rogers was appellant's only agent with authority to collect current and delinquent dues from members, and to demand and receive, in the instances provided in the laws of the order, health certificates, as a condition precedent to the reinstatement of a lapsed certificate; therefore, when Munsford paid the delinquent dues for insured, Rogers could have demanded health certificates, and was not compelled to accept the arrearages in the absence of a showing as to the then condition of the health of insured; however the delinquent dues were accepted by the recorder, with full knowledge that the policy was in a lapsed condition. The recorder was not only the clerk of the local council, but appellant's exclusive agent within the scope outlined above; that is, was authorized to represent the order in collecting dues, and in demanding health certificates as a condition precedent to reinstatement. It follows, therefore,

1046

that the Prætorians, through its said agent, was charged with the knowledge he acquired, and was bound by the acts he performed, within the scope of this exclusive agency.

It cannot be said, in any true sense, that the recorder reinstated the lapsed policy. Having waived, as he was authorized to do, the presentation of health certificates, having accepted payment of delinquent dues, without inquiry as to the health of insured, he was left without discretion in the premises; reinstatement followed as a matter of course and of right, and not as a matter of grace, or of discretion on the part of the recorder, or any other officer of the order. If health certificates had been demanded and furnished by insured, when the dues were tendered, the recorder, in such instance, should have reported same, either to the president or secretary of the order, as provided in section 3 of article 26 of the Constitution, as follows: "Reinstatement shall not be effective until statements (certificate of health signed by insured and a like certificate signed by a medical examiner) have been approved by the president or secretary, and notice thereof mailed to the member." However, having waived the production of health certificates, there was nothing to report and nothing to be considered by either the president or secretary; hence action under this provision of the laws was obviated.

After accepting payment of the delinquent dues, the recorder mailed the customary notice, demanding of insured payment of current dues for January, 1930; and in compliance with the demand, Munsford, for insured, made payment prior to, but on the day of, insured's death.

In view of this situation we hold that, by collecting the arrearages for November and December, with full knowledge of the forfeiture, without a showing as to the condition of insured's health, and thereafter, by demanding and collecting current dues for January, 1930, and by retaining the dues collected, delinquent and current, appellant, by each and all of the acts recounted, waived the forfeiture, recognized the continued existence of the policy, and is now estopped to insist upon forfeiture as a defense.

Analogies will be found to different phases of the case, and the rules of law applicable thereto were announced, in the cases cited below, the leading one, however, being that of Bailey v. Sovereign Camp W. O. W. (116 Tex. 160, 286 S. W. 456, 457, 288 S. W. 115, 47 A. L. R. 876), decided by the Supreme Court, presided over by special judges, reversing the Court of Civil Appeals (277 S. W. 782). This case is directly in point on the facts; delinquent dues were paid to the clerk of the local lodge during the period of the last illness of the insured, as in the present case; at the time of payment, no representation was made by the insured, and no demand was made upon him for a certificate or showing as to the true condition of his health, just as in the case at bar, and the clerk of the local lodge was without any knowledge whatever as to the condition of insured's health, as is true in the instant case. The Texarkana court denied recovery, holding that, under the facts, there existed neither a waiver of forfeiture nor an estoppel to insist upon that defense. We will quote liberally from this case, because, in our opinion, the cumulative effect of the case law of this state is reflected thereby, and that the doctrine announced rules this case. Among other things, the court said:

"* * * Upon receipt of said arrearages and dues on June 12, 1922, the defendant order did not have to accept same, and Bailey had no absolute right to make such payment after the expiration of the 10-day period without also furnishing a written statement and warranty of good health and nonuse of intoxicants as provided in section 66, subd. (b), of said by-laws.

"This brings us to a well settled rule in the law of insurance, which is as follows: When, under a policy of insurance, a forfeiture has been worked and the insurer has knowledge of the existence of facts which constitute the forfeiture of the certificate or policy, any unequivocal act done after the forfeiture has become absolute, which recognizes the continued existence of the certificate or policy, or which is wholly inconsistent with a forfeiture, will constitute a waiver thereof. See Calhoun v. The Maccabees (Tex. Com. App.) 241 S. W. 101, and cases therein cited. * * *

"In this case it is undisputed that the insurer did have knowledge of the facts constituting the forfeiture. When Bailey failed to pay his assessment during the month of May and within 10 days thereafter, the local clerk at Fort Worth knew that the dues had not been paid, and that Bailey's benefit certificate had become forfeited, and that reinstatement could only become effective by the furnishing of a written statement and warranty, as provided in the by-laws, in addition to the payment of said dues. The clerk of the local camp was also the agent of the defendant order, and the order is charged with the knowledge secured by him in the scope of his agency, and knowledge and notice acquired by the local clerk in the performance of his duty are as a matter of law imputed to the principal. See Calhoun v. The Maccabees, supra, and authorities therein cited. Therefore the defendant order was charged with the knowledge imputed to it by law that Bailey had forfeited his certificate and he had not made payment for reinstatement within the 10-day period. * * *

"This brings us to the question as to whether or not there was an unequivocal act of the insurer recognizing the existence of the pol-

icy and benefit certificate, and which was wholly inconsistent with the forfeiture. The defendant order accepted the dues and premium upon Bailey's certificate on the 12th day of June, 1922, and accepted same without requiring a written warranty, a thing they were not forced to do. Nothing could be more inconsistent with the forfeiture of an insurance policy or certificate than the. acceptance and retention of the premium paid for the protection afforded by the policy, as was done in this instance. * * *"

Also see Equitable Society v. Ellis, 105 Tex. 526, 147 S. W. 1152, 152 S. W. 625; Sovereign Camp v. Putnam (Tex. Civ. App.) 206 S. W. 970; Calhoun v. Maccabees (Tex. Com. App.) 241 S. W. 101, 103; Maccabees v. Johnson (Tex. Civ. App.) 273 S. W. 612; Sovereign Camp v. Hines (Tex. Civ. App.) 273 S. W. 927; Stone v. Brady (Tex. Civ. App.) 2 S.W.(2d) 538; Home Insurance Co. v. Puckett (Tex. Civ. App.) 17 S.W.(2d) 849.

It is insisted, however, that the receipt given by the local recorder to Munsford, when the delinquent dues were paid, gave notice to insured that the payment would not be effective for reinstatement unless he was at that time in good health. The receipt had printed on the reverse side the following language: "If any part of the payment for which the receipt is issued is for dues more than thirty days past due, it is received upon the condition and agreement that he or she has no claim whatever upon the order until said member's application for reinstatement is accepted by the Supreme Senate (home office). If not accepted, then the amount of this receipt is to be refunded to the member."

It was not shown that the attention of either Munsford, the insured, or the beneficiary was called to this language, or that either assented thereto; in fact, Munsford testified that he knew nothing of its existence until after the death of insured. However that may be, the recorder, having waived the provision requiring the presentation of health certificates as a condition precedent to reinstatement, thereby waived the only provision of the contract that would have authorized the imposition of the condition printed on the reverse side of the receipt, and, being subsidiary to the main provision, was also waived.

In view of the way appellant administered the provisions of its laws, relating to forfeitures and reinstatements, as revealed by the record, we are constrained to believe that, had Krusz recovered from his illness, forfeiture of the policy would never have been mentioned; hence we adopt, as pertinent, language used by the Supreme Court in a similar situation in the Bailey Case, supra; the court said: ."Insurance companies cannot so gamble on the lives of their policy-holders.

Having accepted the wager in accepting the premium, the order was bound by the consequences."

After examining appellant's authorities and carefully considering all assignments, we have concluded that no error is shown, and that the judgment of the trial court should be affirmed.

Affirmed.