## THE PRÆTORIANS v. KRUSZ.

### No. 1388—5992.

Commission of Appeals of Texas, Section B.
March 15, 1933.

T. W. Davidson, of Dallas, for plaintiff in error.

Leake, Henry, Wozencraft & Frank, of Dallas, for defendant in error.

RYAN, Judge.

This suit was brought in the district court of Dallas county by defendant in error to recover upon an insurance policy, dated January 15, 1929, issued to her deceased husband, William J. Krusz, by plaintiff in error, in the sum of $5,000.

The defense was that the insurance had lapsed because of nonpayment of monthly dues as required, and therefore was not in effect.

Judgment in the trial court for Mrs. Mae Krusz, defendant in error, was affirmed by the Court of Civil Appeals. 36 S.W.(2d) 1043.

The Prætorians is a fraternal society with a lodge system operating in fourteen southern states; the headquarters or home office is in the city of Dallas and its governing authority is called the "Supreme Senate." Council No. 1, of which deceased was a member, is a local or subordinate branch, operating under the supreme body. The Worthy Recorder of a local council is required to give an approved bond to the Supreme Senate, conditioned upon the faithful discharge of his duties and proper accounting for all funds coming into his hands; he collects all dues, keeps a record of the proceedings of the council, and must close his collections not later than noon of the twentieth day of each month, and send in his report to the Supreme Secretary, without delay, with draft, money order, or cashier's check to cover.

The insured had the privilege of paying premiums or rates, designated in the policy as "dues," either monthly, quarterly, semi-annually, or annually.

Krusz elected to pay dues monthly at the rate of $5 each month.

The policy provides: "If the insured elects to pay monthly, such payments shall be due on the first day of each and every calendar month and must be paid by the twentieth of said month; failure to make any such payment as so provided, shall automatically lapse the policy." The policy also provides that upon its lapse by failure to pay dues, it may be reinstated by submitting satisfactory evidence of good health and insurability and upon payment of all arrears, together with dues for the current month. It is also provided in said policy: "(1) No change, modification or alteration of this certificate shall be made unless endorsed hereon by the President, Vice-President or the Secretary of the Prætorians. The Prætorians shall not be bound by any promise or representation made by any person unless made in writing by one of said officials. (2) It is agreed by the insured holding this certificate that the certificate, the Charter or Articles of Incorporation, the Constitution and Laws of the Prætorians, and the application herefor, and the medical examination signed by the applicant, with all amendments to each thereof, shall constitute the agreement between The Prætorians and the insured."

The constitution and by-laws provide:
"Article XX, Sec. 2. All dues shall be pay-

able for each month on or before the first day thereof, and must be paid not later than the 20th. Sec. 3. It shall be the duty of every member to see that his dues are paid in time to his Worthy Recorder. * * * Members failing to pay dues on time in accordance herewith shall lapse immediately without notice, and all rights, privileges and benefits shall cease at once, except as to any paid up and extended values to which they may be entitled, as hereinafter provided. Notice of lapse may be thereafter sent out by the Secretary, but shall be in the nature of a reminder only, and not a requisite either before or after suspension takes effect.

"Article XXVI, Sec. 1. Recorders have no authority to reinstate members who have lapsed. Sec. 2. Any member whose dues shall not be paid as herein provided shall immediately lapse. To effect reinstatement when lapsed for less than thirty days, a member, while in good health, may deposit with his Worthy Recorder all unpaid dues including those for the current month, and when the Worthy Recorder has satisfied himself that the member has been in continuous good health since the date of lapse, and when the Supreme Senate has received and accepted such dues the reinstatement shall be effective but not otherwise. Sec. 3. To effect reinstatement when lapsed for more than thirty days and less than six months, a member shall furnish a certificate of health signed by him and a like certificate of a Medical Examiner on form prescribed by the Supreme Senate, and shall pay to his Recorder all dues, including those for the current month. Reinstatement shall not be effective until such statements have been approved by the President or Secretary, and notice thereon mailed to the member."

Such provisions are in pursuance of article 4846, Rev. Stat. 1925, applicable to the Praetorians, as follows: "The Constitution and laws of the society may provide that no subordinate body nor any of its subordinate officers or members shall have the power or authority to waive any provision of the laws and Constitution of the society, and the same shall be binding on the society and each and every member thereof and on all beneficiaries of members."

The Recorder might therefore have received the unpaid dues including those for the current month, provided the lapse was for less than thirty days, if he has satisfied himself that the member has been in continuous good health since the date of lapse —no certificate of health or of a medical examiner being required—but no reinstatement would be effected until the Supreme Senate has received and accepted such dues. Without such receipt and acceptance of said dues by the Supreme Senate, the member is not reinstated.

Where the lapse has continued for more than thirty days and less than six months, the member can be reinstated only when he has paid to the Recorder all dues, including those for the current month, and furnished a certificate of health signed by him and a like certificate of a medical examiner, on forms prescribed by the Supreme Senate, and when approved by the President or Secretary of the society and notice thereon mailed to the member.

The undisputed record shows that the insured did not pay dues for November, 1929, and the policy therefore automatically lapsed on November 20, 1929. He was not reinstated during December nor did he pay dues during that month. The insured became ill with appendicitis on January 7, 1930, and a physician sent for; on January 14, 1930, he was operated upon, and died on January 18, 1930.

As testified by the widow, at her request her brother James G. Munsford "carried the dues" for November and December to the Praetorians' office "at about eight-thirty o'clock or a quarter until nine and her husband was operated on about ten-thirty"; this occurred on the day the operation was performed.

No reference was made to the condition of the insured's health by Munsford or the Recorder's clerk, who received the money, but a receipt was given Munsford reading: "Dallas Council No. 1, The Praetorians. Dallas, Texas, January 14, 1930. Received of W. J. Krusz, dues for Nov. and Dec. $10.00 Cert. No. 176550. I. W. Rogers, Recorder, By A." "Official Receipt to be used only in accordance with the Constitution." The reverse side reads as follows: "If payment, for which this receipt is issued, was made after the 20th of month for which member is due, it is received upon member's warranty and declaration that he or she is, and has been, in continuous good health since date payment was due according to constitution of the Order. If any part of payment for which this receipt is issued, is for dues more than thirty days past due, it is received upon the condition and agreement that he or she has no claim whatever upon the Order until said member's application for reinstatement is accepted by the Supreme Senate. If not accepted, then the amount of this receipt is to be refunded to said member."

On January 16, 1930, the following notice was received at the insured's residence, viz.: "Dallas, Texas, Jan. 15, 1930. Worthy Praetorian: Please send Praetorian Dues for Month of ―――― Jan. 1930 and oblige. Payments are due on 1st and should be paid before 20th of each month. Phone 2-7023, 307-8 Praetorian Bldg. I. W. Rodgers, Recorder, Praetorian Council No. One. If you have paid above dues, disregard this notice." It was postmarked: "Dallas, Texas, January 15, 1:30 P. M., 1930, Young Str. Stat. 2." After receipt

thereof, Mrs. Krusz "sent the January dues down" by her brother, the same Mr. J. T. Munsford who acted for her in the payment of the November and December dues. To quote from her testimony: "I do not know what time of day he carried them down, but it was in the morning sometime, I expect about nine o'clock. Mr. Krusz died at twelve-twenty o'clock on the same day I sent the dues. I sent the January dues on the morning of the 18th, and I sent the November and December dues on the 14th, that was the day he was operated on. That was the day after Mr. Krusz had gone to the hospital."

Munsford received the following receipt: "Dallas Council No. 1, The Prætorians. Dallas, Texas, Jan. 18, 1930. Received of W. J. Krusz, dues for Jan. $5.00. Cert. No. 176550. I. W. Rodgers, Recorder, By A." It was the same form of receipt, bore the same indorsements, and printed on the reverse side were the same stipulations and conditions as the receipt he had previously received for the November and December payment.

All collections by the Recorder are closed on the 20th day of each month, and he is required to then send in his reports to the Supreme Secretary without delay, accompanied by draft or money order representing the amount of such collections. Here, the Recorder closed such collections accordingly and by the 25th of the month of January, 1930, had his report in the hands of the Supreme Secretary with the amounts collected.

The Recorder is not required to report each collection, as received, but these all go in with his general monthly report, made once a month. The report for January, therefore, included the three items for November, December, and January, was made in regular routine, and gave the first notice the supreme officers had for such payments. They placed the amount of such three items in a "Suspense Account" and have deposited it in the registry of court as a tender. Mrs. Krusz testified: "I never have been willing to accept back these dues and if they had been offered to me I would not have accepted them."

Proofs of death were made and filed with the Prætorians on January 28, 1930. The claim was rejected and suit was filed on February 18, 1930.

### Opinion.

The question in this case is whether, after the policy was forfeited because of nonpayment of dues within thirty days after the November payment became delinquent, the policy was unequivocally recognized by the society and therefore the forfeiture was waived, or, to phrase it differently, whether the society is estopped from asserting such forfeiture, and this suggests the further question whether such a conditional receiving of dues by the Recorder, as is shown in this case, becomes an unequivocal receipt thereof by the

supreme body, even before the latter has knowledge thereof, merely because the Recorder has accepted the same and regardless of the fact that such acceptance was conditional.

■ Authorities holding that acceptance of premiums, after delinquency in their due payment, is either a waiver or an estoppel or operates as a new contract of insurance, are unanimous in the holding that such acceptance must be unconditional. That is the pivot upon which such cases must turn and the character of such acceptance—whether unconditional or otherwise—depends upon the facts in each case. It is only where the acceptance is unqualified or unconditional, that it can be said, as a matter of law, there is an effective waiver.

Thus, in Bailey v. Sovereign Camp, 116 Tex. 160, 286 S. W. 456, 288 S. W. 115, 47 A. L. R. 876, the premium was accepted unconditionally by the local clerk and receipt accordingly issued. The special Supreme Court held that this was an unequivocal act done after the forfeiture had become absolute, was inconsistent with a forfeiture, and constituted a waiver thereof, and "when the company accepted his premium unconditionally, they in effect entered into a new contract of insurance with him."

In Calhoun v. The Maccabees (Tex. Com. App.) 241 S. W. 101, it was shown that the subordinate "record keeper," who collected the assessments, forwarded them (with the exception of the last) to the Supreme Tent; it was assumed in the opinion that neither the local tent nor its record keeper had authority to effect a waiver of any forfeiture of the certificate, either past or prospective, so as to bind the Supreme Tent, but the court said that when such collected assessments went to the proper officer of the Supreme Tent and was credited to the insured's account, such act on the part of the supreme officer was the act of the association itself and constituted a waiver of any forfeiture that had then accrued by reason of a past delinquency, under the rule that any *unequivocal* act done after the forfeiture has become absolute, which recognizes a continued exercise of the certificate or policy, or which is wholly inconsistent with a forfeiture, will constitute a waiver thereof.

The difference between those cases and the one at bar is that there the payments were received unconditionally, whereas, here the payments were not received unconditionally, but more in the nature of a deposit subject to approval of the supreme authority, for it is expressly stated in the very receipts which evidence the payments and conditioned on which such payments were received by the recorder, that such payments were received "upon the condition and agreement that he or she," meaning the insured member, "has no claim whatever upon the order, until said member's

application for reinstatement is accepted by the Supreme Senate. If not accepted, then the amount of the receipt is to be refunded to said member."

There is nothing equivocal about that clause in the receipt, and, if it is to be given any effect at all, precludes any support to the contention of defendant in error that the payments of arrearages were accepted unconditionally and operated in law as a waiver.

In Sovereign Camp v. Putnam (Tex. Civ. App.) 206 S. W. 970, the facts were: Putnam became a member of Woodmen of the World in 1899, and there was issued to him a beneficiary certificate in the sum of $3,000, payable to his wife, at his death. At that time he was a railroad clerk or cashier at Beaumont. Under the order's by-laws, a member entering certain "prohibited occupations" is required to notify the clerk of the local camp of the fact, whereupon such member's assessment is increased, failure to pay which forfeited the certificate. In 1907 Putnam entered the saloon or retail liquor business, one of the "prohibited occupations," and remained in such business until his death in June, 1916.

No additional payments or increased assessments were demanded of Putnam by reason of his being in the saloon business, nor were any such ever paid by him. The clerk of the local camp, from time to time and in the usual way, called at Putnam's saloon and collected from him, or from his employees, the ordinary or customary dues and assessments; from the time Putnam originally became a member, until his death, the records and minutes of the order show him as a member in good standing of the local camp and that his certificate was in full force and effect and in good standing with the Sovereign Camp.

The special Court of Civil Appeals held the association liable, not on the ground of waiver but of estoppel, in that the local clerk had notice of all facts relating to, affecting, and controlling the amounts payable by Putnam and demanded and accepted certain sums as being sufficient; that Putnam relied upon this as being correct and all parties for many years acted upon that assumption.

Clearly a different condition of affairs than those in the instant case.

In Equitable Life Assurance Society v. Ellis, 105 Tex. 527, 147 S. W. 1152, 152 S. W. 625, 627, the facts were that Ellis and the society corresponded and negotiated with a view to keeping the insurance in force by means of a loan on the value of the policy; the question of waiver was submitted to a jury trial and the court held that this was proper. The society wrote Ellis "the society is willing to lend you $1159.00 on the policies to apply toward the payment of the premiums due a short time ago." Judge Phillips said: "In the estimate of the company they were then either forfeited or in force. They

had no middle status. As the company itself regarded them up to the time of Ellis' death so the law ought to regard them, and as these letters furnish evidence that down to May 9th the company recognized them as existing policies and so dealt with them in the negotiation with Ellis respecting the loan, it was but proper, that the jury should determine the issue."

Here, there were no such negotiations; here, his brother-in-law, when the insured was uninsurable and ill, a short time—(some two hours) before a major operation was performed on him, paid to a clerk at the recorder's office the dues for November and December, and four days thereafter (some three hours before and on the day of his death) paid the dues for January. These payments, as stated above, were received conditionally and in no sense can it be said that such receipt was an unconditional recognition of the continued validity of the policy.

In Mutual Reserve Fund Life Ass'n v. Lovenberg, 24 Tex. Civ. App. 355, 59 S. W. 314, 317, on payment of overdue premiums the insured received a receipt, containing certain conditions to the effect that the insured is in good health and that the receipt of future assessments by the insurer shall not be considered a waiver of the conditions of such receipt. Judge Pleasants, of the Court of Civil Appeals, in disposing of the contention that the association had waived its rights by the acceptance of subsequent dues and mortuary calls upon the policies there involved, said: "The deceased having accepted the conditional receipt for the payment made by him on the 8th day of January, 1897, and having had an opportunity to know its conditions, his assent to the same will be conclusively presumed, and such receipt became a binding contract between him and the association, and, being a contract in writing, its terms cannot be contradicted or waived, except upon proper allegations and proof of fraud, accident, or mistake. Abram v. Railway Co., 83 Tex. 61, 18 S. W. 321; Griffin v. Bristle, 39 Minn. 456, 40 N. W. 523; Association v. Bozeman, 21 Tex. Civ. App. 490, 52 S. W. 94," and held that therefore "the issue of waiver is not raised by the evidence in this case," citing Joyce, Ins., § 1367; Merchants' Mut. Insurance Co. v. Lacroix, 45 Tex. 169; Globe Mut. L. Insurance Co. v. Wolff, 95 U. S. 326, 24 L. Ed. 387, because under the terms of said receipt "no waiver can be presumed from the payment of said subsequent dues and premiums, in the absence of any evidence showing, or tending to show, that the appellant had any notice, at or before the time such payments were made, that the conditions stated in said receipt * * * did not exist, or that deceased was not a perfectly healthy man."

In Travelers' Protective Ass'n v. Ziegler (Tex. Civ. App.) 250 S. W. 1115, 1117, the insured on January 15, 1921, paid for a six

months' period and received a receipt or new card stating that he was entitled "to all benefits and privileges of the association until June 30, 1921, and said certificate shall be in force from the date of the payment of the dues until that date." The insured was killed in an automobile collision on July 2, 1921, and it was contended by the beneficiary that the deceased was reinstated on January 15, 1921, and the six months' payment period commenced then, so that he was not in arrears for dues when he was killed on July 2, but the court said: "That card was accepted without protest or dissent of the insured, and no effort was made in any way to have it corrected. It was admissible as evidencing a subsequent agreement between the parties. Ins. Co. v. Tabor, 111 Tex. 155, 230 S. W. 397; Ins. Co. v. Rosenberry (Tex. Com. App.) 213 S. W. 242; Southland Ins. Co. v. Hopkins (Tex. Com. App.) 244 S. W. 989. * * * The parties recognized that the payment made on January 15, 1921, was only for dues to June 30, 1921, and acted thereon, for deceased received and retained without objection the new card stating that the dues were only to the date named. * *. * The insured, the insurer, and the beneficiary so construed the contract, and so intended to be bound. That intention and construction of the contract must be made effective. Mortgage Co. v. Massie, 94 Tex. 339, 60 S. W. 544."

In N. Y. Life Ins. Co. v. Scott, 23 Tex. Civ. App. 541, 57 S. W. 677, the facts were that a premium due in June was not paid, but a premium due in September was received and placed to the insured's credit by the company's agent, who notified him that the policy had lapsed for nonpayment of the June premium and its payment and a health certificate were necessary to reinstatement. In October two weeks before his death, while sick, insured sent the amount of premium to the agent, but no health certificate, and was notified that it could not be reported until the certificate was furnished. The court held that the forfeiture by such nonpayment was not waived by such receipt of premiums.

That case is analogous to this; there the acknowledgment of payment was by letter, here by written receipt containing the conditions upon which reinstatement would be had, compliance with which became of the very essence of the contract of reinstatement.

The general rule is that where the acceptance or retention of premiums on a life policy is on condition, there is no waiver where the condition is not fulfilled, unless the condition itself is waived. 37 C. J. 537.

We have reached the conclusion that there was no such waiver on the part of the association and that Mrs. Krusz is not entitled to recover on the policy; however, she is entitled to recover the sum of $15 so condition-

ally paid on account of premiums for said months, November, December, and January, and deposited by plaintiff in error in the registry of the trial court, as a tender.

We therefore recommend that the judgments of the trial court and Court of Civil Appeals be reversed and judgment be rendered in favor of plaintiff in error, except that defendant in error recover the amount of said deposit, to wit, $15, and the clerk of the trial court be directed to pay same to her.

CURETON, Chief Justice.

Judgments of the district court and Court of Civil Appeals are both reversed, and judgment rendered for plaintiff in error.