**THE PRAETORIANS v. DIES et al.**

No. 3339.

Court of Civil Appeals of Texas. Beaumont.

June 29, 1939.

Rehearing Denied July 12, 1939.

John N. Harris, Jr., and J. W. Randall, both of Dallas, and E. B. Pickett, Jr., of Liberty, for appellant.

Chap. B. Cain and Thos. A. Wheat, both of Liberty, for appellees.

O'QUINN, Justice.

Suit by Gladys Dies, widow of Jerry W. Dies, deceased, who during the pendency of the suit married H. T. Mason. Mason intervened as party plaintiff adopting the pleadings of his wife, against The Praetorians, a fraternal benefit society to recover on a policy of life insurance issued to her former husband, Jerry W. Dies, in which she was beneficiary. The prayer was for the face of the policy, $1,500, twelve per cent penalty, and attorney's fees in the sum of $500.

The Praetorians defended on the grounds of breach of warranty in the application for the policy; that the policy was never delivered to the insured; that the policy had lapsed for the non-payment of premiums; that the application for reinstatement of the policy was not genuine—was a forgery—and that the warranty of good health contained in the application for reinstatement was breached.

The case was tried to a jury upon special issues. On the jury's answers, judgment was rendered for all the relief prayed. Motion for a new trial was overruled, and we have the case on appeal.

The policy was issued upon a non-medical examination application. The application was made on regular form, September 2, 1936, and the policy issued September 14, 1936. The premiums were to be paid monthly in advance before the first day of the month without notice to assured, and the policy provided that non-payment of premiums would lapse the policy without notice to holder. The first premium—for October—was paid. The premiums for November and December were not paid. Although the policy provided that non-payment of premiums would lapse the policy without notice to assured, still on the failure to pay the premiums, on December the 18th The Praetorians gave notice to the assured in writing of such failure. No payment was then made and under the terms of the policy it lapsed.

On December 30, 1936, W. G. Clark, District Manager for The Praetorians, instructed S. Phillips, who as agent for The Praetorians had taken Dies' application for the insurance, to get the lapsed policy reinstated. He, Phillips, prepared (on regular form) and furnished for Dies to sign, the following application for reinstatement:

"Application for Reinstatement.
"To The Praetorians:

"My policy No. 304556 having lapsed, I hereby tender all unpaid premiums including the current month, amounting to $————, and warrant that I am now in good health and have been so since date of lapse (except as stated below).

Blank

"It is understood that my right of reinstatement is subject to the approval of the Home Office.
                    "Jerry W. Dies
                    "Insured
          "Town Daisetta, State Texas"
"Inez L. Arnold
"Witness
"Dated 12–30, 1936."

On said date, December 30, 1936, Mrs. Inez Arnold, sister to the wife of Jerry W. Dies, paid to S. Phillips the lapsed installments in the sum of $26.70. That paid dues to February, 1937. At the time of the application for reinstatement, December 30, 1936, Jerry W. Dies was in bed seriously sick. When the application for reinstatement was presented to him he refused to sign it, saying to Mrs. Arnold: "Inez, I can't sign it. I may die and have to go to hell. If I sign that, I will have lied." The application contained the statement, "and warrant that I am now in good health and have been so since date of lapse (except as stated below)." There was a blank place, but it was not filled in. So the warrant of good health was absolute, and Dies knowing this refused to sign the application. He died March 26, 1937. In some way not disclosed by the record, the name "Jerry W. Dies" was signed to the application. It is admitted that the same was a forgery. Mrs. Arnold testified that she told Phillips, agent of The Praetorians, that Dies refused to sign it. Phillips knew of Dies' physical condition. She also denied that she signed the application for reinstatement as a witness as shown on the instrument in evidence but admitted that she signed one similar

to it. She further testified that on that day, December 30, 1936, she paid the lapsed premiums, $26.70, to Phillips, and he delivered the policy (which he had been keeping for Dies) to her, cautioning her to say nothing about it because it might get him into trouble. Later Mrs. Arnold paid two more premiums (for February and March).

That the policy lapsed for non-payment of premiums is not disputed. That the application for reinstatement was a forgery is without dispute. That Dies, the insured, was in bed seriously ill at the very time the application for reinstatement was presented to him, and that he refused to sign same, saying to his sister-in-law, Mrs. Arnold, "Inez, I can't sign it. I may die and have to go to hell. If I sign that, I will have lied", is without dispute. That Phillips, local agent of The Praetorians, and who took Dies' application for the policy, knew of Dies being dangerously ill, and of his refusal to sign the application for reinstatement which contained the statement that he, Dies, was then in good health, because the statement of good health in the application was not true, is also uncontested.

The policy contained this provision relative to reinstatement of lapsed policies:

"Section 3 (Article XXIII). To effect reinstatement when lapsed for more than thirty days and less than six months, the insured shall furnish a certificate of health signed by him and a like certificate of a medical examiner on form prescribed by the Board of Directors, and shall pay to his Cashier all premiums, including those for the current month. Reinstatements shall not be effective until such statements have been approved by the President or Secretary, and notice thereon mailed to the policy holder."

"Reinstatement: Upon lapse of this policy by failure to pay premiums, The Praetorians will reinstate the same upon submission of satisfactory evidence of good health and insurability, together with tender of all premiums in arrears, including the current month. Interest at the rate of 5% compounded will be charged if reinstatement is not effected within six (6) months from the date of lapse."

Regular forms for reinstatement were furnished. The application here involved is set out supra. It is admitted to be a complete forgery.

■ The policy lapsed for non-payment of premium on November 1, 1936. No compliance with the provisions of the policy for reinstatement was shown. We take it, from the record, that the local agent who was at all times in possession of full knowledge of the facts, collected the lapsed dues from Mrs. Arnold and sent them in to The Praetorians without any reinstatement of the policy, other than the forged application of which he had knowledge, but of which The Praetorians had no knowledge. We think this did not have the force of reinstatement—it could not have. But appellees contend that this amounted to a waiver of strict compliance with the reinstatement provisions of the policy and that by acceptance of the premiums the policy was restored to full force and effect. We cannot agree to this contention. Appellant acted in the light of the apparent facts before it. It had no knowledge that Dies, the insured, was, at the very hour that the attempted application for reinstatement was presented to him for his signature, in bed seriously ill and refused to "sign a lie" to get reinstated. It had no knowledge that the premiums necessary for reinstatement were paid by one without any legal interest in the policy furnishing the money to its agent who had full knowledge of all the facts, and that the attempted reinstatement was not within any provision of the policy. So far as the record discloses, it had no hint of what was being done to deceive it and to hide from it the facts to which it was entitled.

■■ It is well settled law that the application for the policy, the policy itself, and the constitution and by laws of the fraternity insurance company, such as here, constitute the insurance contract. Article 4834, R.S. 1925. A delinquent member of the fraternal beneficiary association must take knowledge of the fundamental laws of the order in respect to the right to be reinstated when lapsed. Parrott v. Brotherhood of Railroad Trainmen, Tex.Civ. App., 85 S.W.2d 306, writ refused.

The constitution of The Praetorians, among other things, provided:

"No salesman, agent, organizer, council committee or body whatsoever, shall be authorized to change, waive, modify or alter this Article and The Praetorians shall not be liable for any oral or written statements so made unless same is embodied in the approved application and contract of insurance at the time of acceptance and approval by The Praetorians."

"Should the applicant make false or misleading fraudulent statement, or in any way misrepresent the facts in order to obtain insurance in The Praetorians, in that event his policy shall be void at the option of The Praetorians, and The Praetorians shall have no liability whatsoever except the refund of premiums actually paid in by the policyholder."

"No State Senate or council, nor any officer thereof, or any agent, officer, deputy or representative of The Praetorians shall be authorized to make or enter into any contract on behalf of The Praetorians or bind the Supreme Senate or any Board of directors, nor shall any such State Senate, Council, agent, officer, deputy or representative be authorized to change, alter or add to any written contract, nor to make any representations concerning the same except as therein or as contained in this constitution, nor shall The Praetorians be bound in any manner otherwise than as provided in this constitution and by the terms of said contracts in writing adopted and provided by the Supreme Senate or Board of Directors, The Praetorians shall not be bound by any statement or act of any agent, representative, deputy, employe or subordinate body or any officer or employe thereof, unless actually known to and ratified by the Supreme Senate or Board of Directors, or their officers, and The Praetorians shall not be deemed to have notice of any fact or to be bound or estopped thereby unless the same shall be actually known to said Supreme Senate or Board of Directors or their authorized officers at the Home Office in Dallas, Texas; and notice to any subordinate officer, deputy, council, representative or body other than the Supreme Senate or its officers shall not be construed as notice to The Praetorians."

As insured, Jerry W. Dies, had let his contract of insurance lapse on November 1, 1936, it was necessary on December 30, 1936, when an attempt was made to get him to reinstate the policy, for him to sign an application for reinstatement, and that said application state that he was then in good health and had been since the date of the lapse. Being then in bed seriously ill, he refused to sign the application. He never signed same which was known to the agent of appellant, but some one forg-

938

ed the name of Dies to the application and with the amount of lapsed dues (not paid by insured; but by a stranger to the contract) sent it in to the Home Office. That did not reinstate the policy, the fraud not being known to appellant. The agent had no authority to waive the requirement that the insured execute the application for reinstatement containing a warranty of good health, and so no liability attached. Burchfield v. Home Benefit Association, Tex.Civ. App., 73 S.W.2d 559, writ refused; Article 4846, R.S.1925; The Praetorians v. Strikland, Tex.Com.App., 66 S.W.2d 686; McCurry v. The Praetorians, Tex.Civ.App., 90 S.W.2d 853; Sovereign Camp W. O. W. v. Sunday, Tex.Civ.App., 103 S.W.2d 484, writ refused; Sovereign Camp W. O. W. v. Moraida, 131 Tex. 250, 113 S.W.2d 177; Sovereign Camp W. O. W. v. Cameron, Tex.Civ.App., 41 S.W.2d 283, writ refused; The Praetorians v. Kruz, Tex.Com. App., 58 S.W.2d 27.

Appellant tendered and paid into court all premiums received by it on the policy.

For what we have said, it follows that the judgment should be reversed and judgment here rendered for appellant, and it is so ordered. Reversed and rendered.